# 14-1240-cv

## United States Court of Appeals

### *for the*

## Second Circuit

PFIZER INC.,

*Petitioner-Appellant,*

v.

ICWUC/UFCW LOCAL 95C AND LOCAL 143C,

*Respondent-Appellee,*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF AND SPECIAL APPENDIX FOR APPELLEES
LOCALS 95C AND 143C**

Randall Vehar, Esq., Trial Counsel
Robert W. Lowrey, Esq.
1655 West Market Street
6th Floor
Akron, Ohio    44313
330/926-1444
330/926-0950   Fax

Patricia McConnell, Esq.
Meyer, Suozzi, English & Klein, P.C.
990 Stewart Avenue
P.O. Box 9194
Garden City, NY    11530-9194
516/741-6565
516/741-6706   Fax

*Attorneys for Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Locals 95C and 143C request oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

SUMMARY OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Bargaining History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The Merger. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    Transfer of Wyeth "Legacy" Employees to Pfizer Medical Plan. . . . . . . . 11

    Pfizer's Communication of Upcoming Benefit Changes to Union
        and Employees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    The Grievances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    The Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    The Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

LAW AND ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I.     The Review Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    A.     Summary judgment standard. . . . . . . . . . . . . . . . . . . . . . . . . . 24

B.    The standard of review of labor arbitration awards is one of the narrowest known in the law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

C.    This Court must defer to the Arbitrator's findings of what issues and sub-issues were before him . . . . . . . . . . . . . . . . . . . . . . . . 29

1.    The extreme deference that this Court must give to the Arbitrator's findings extends to his view of the "scope of" the grievance and/or submission before him. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

2.    When a party may, but fails to, timely object to an arbitrator that he allegedly had decided issues not before him, it has waived those objections. . . . . . . . . . . . . . . 34

3.    Pfizer effectively submitted the question of whether the "notice" issue was properly before the Arbitrator for resolution and this Court must defer to the Arbitrator's implicit resolution of that issue. . . . . . . . . . . . . 39

D.    Pfizer incorrectly seeks to have this Court search and weigh not only the entire record before the Arbitrator, but improperly seeks to add to that record. . . . . . . . . . . . . . . . . . . . . . . . 40

E.    While there is no evidence that the district court failed to consider the entire arbitration record, the relevant question, instead, is whether there is at least some evidence to support the Arbitrator's factual findings. . . . . . . . . . . . . . . . . . . . . . 43

II.   The Arbitrator's findings, that the "transfer" and "notice" issues were before him for resolution, are supported by some evidence in the arbitration record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

A.    The Arbitrator's factual determination, that the "transfer" of "legacy" Wyeth employees from the Wyeth to the Pfizer plan for retiree medical plan was being challenged by the Union, is sufficiently supported by the arbitral record. . . . . . . . . . . 45

B.    Union Counsel did not waive the "transfer" claim (and the defense thereto) raised by the grievances. . . . . . . . . . . . . . . . . . . . . 50

C.    The Arbitrator's determination, that the "notice" issue was before him, must be given extreme deference and upheld, since more than only a barely colorable amount of evidence supports his finding. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

III.    The Arbitrator's findings, that the term "Plan" does not include the Pfizer retiree plan, and, that the "as early as possible" requirements of the "notice" provisions of the Equivalency Provisions were not met, draw their essence from the Coordinated Bargaining Agreement and some of the evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

A.    The Arbitrator's finding, that the term "Plan" in the Equivalency Provision did not include the Pfizer retiree plan, was within his authority and may not be disturbed by this Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

B.    The Arbitrator did not add to the "notice" requirements of the Equivalency Provisions, but only interpreted and applied those provisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

CERTIFICATE OF COMPLIANCE WITH RULE 32(a). . . . . . . . . . . . . . . . . 70

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

UNION SPECIAL APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .72

# TABLE OF AUTHORITIES

1199 SEIU v. St. Luke Residential Health Care Facility, Inc., 2005 WL1828762
(N.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Allied International Union v. Tristar Control Services, Inc., 2007 WL 2845227
(S.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Andros Compania Maritima, S.A. v. Marc Rich and Company, 579 F.2d 691 (2d
Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Apache Bohai Corporation LDC v. Texaco China BV, 480 F.3d 397 (5th Cir.
2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Bastian-Blessing, 195 NLRB 1108 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . 53, 55

Beth Israel Med. Ctr. v. 1199/S.E.I.U. United Healthcare Workers , 530 F. Supp.
2d 610 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 50

Brotherhood of Locomotive Engineers and Trainmen v. United Transportation
Union, 700 F.3d 891. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Burns International Sec. Servs., Incorporated v. International Union, United Plant
Guard Workers, 47 F.3d 14 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 26, 59

CSX Transportation., Incorporated v. United Transportation Union, 765
F.Supp. 797 (W.D.N.Y. 1991), rev'd, 950 F.2d 872 (2d Cir. 1991). . . . . 31, 34

CSX Transportation., Incorporated v. United Transportation Union, 950
F.2d 872 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 34

Champion Int'l Corp.  v. United Paperworkers Int'l. Union, 779 F.d 2d 328
(6th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Clayton v. International Union, UAW, 451 U.S. 679 (1981). . . . . . . . . . . . . . 35, 39

Clemons v. Dean Witter Reynolds, Incorporated, 708 F. Supp. 62

(S.D.N.Y. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

ConAgra Foods, Inc. v. United Steel, Paper, etc., 2011 WL 570171, 190 LRRM
    2550 (E.D.Tenn. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

D.H. Blair and Company v. Gottdiener, 462 F.3d 95 (2d Cir. 2006). . . . . . . . 25, 26

DST Industries, Inc., 313 NLRB No. 86 (1994). . . . . . . . . . . . . . . . . . . . . . . 52, 55

District Council 1707 v. Association of Black Social Workers Day Care, 2010 WL
    1049617 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Equitable Resources, Incorporated v. United Steel, Paper and Forestry, Rubber,
    Manufacturing, Energy, Allied Industrial and Service Workers International
    Union, 621 F.3d 538 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Executone Information Systems., Incorporated v. Davis, 26 F.3d 1314 (5th Cir.
    1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Fahnestock and Company., Inc. v. Waltman, 935 F.2d 512  (2d Cir. 1991). . . . . 45

Goldman Sachs Execution and Clearing, L.P. v. Official Unsecured Creditors'
    Committee of Bayou Grp., LLC, 758 F. Supp. 2d 222 (S.D.N.Y. 2010). . . . . . 44

Halliburton Energy Servs., Incorporated v. NL Indus., 553 F. Supp. 2d 733
    (S.D. Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Hallinan v. Republic Bank and Trust Co., 519 F.Supp. 2d 340 (S.D.N.Y. 2007). 63

Harry Hoffman Printing, Incorporated v. Graphic Communications Local 261,
    912 F.2d 608 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37, 38, 39

Hilowitz v. Hilowitz, 105 Misc. 2d 384, 432 N.Y.S. 2d 344 (Queens Co. N.Y.S.
    Ct. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Hotel Greystone Corporation v. New York Hotel and Motel Trades Council, 902
    F.Supp. 482 (S.D.N.Y. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

International Association of Machinists and Aerospace Workers v. Tenn. Valley Auth., 155 F.3d 767 (6th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . 31, 33, 48, 50, 53

International Chemical Workers Union Local Number 566 v. Mobay Chemical Corp., 755 F.2d 1107 (4th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

John Wiley and Sons, Incorporated v. Livingston, 376 U.S. 543 (1964). . . . . 57, 63

Johnston Boiler Company v. Local Lodge Number 893, International Brotherhood of Boilermakers, 753 F.2d 40 (6th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Kurt Orban Company v. Angeles Metal Systems, 573 F.2d 739 (2d Cir. 1978). . 31

Landy Michaels Realty Corporation v. Local 32B-32J, SEIU, 954 F.2d 794 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Levine v. Klein, 70 A.D. 2d 532, 416 N.Y.S. 2d 28 (N.Y. Supr.Ct., 1st Dept. 1979) 35

Local 97, IBEW v. Niagara Mohawk Power Corp., 196 F. 3d 117 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Hollywood Heating & Cooling, Inc., 1 Fed.Appx. 30 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . 37

Major League Baseball Players Association v. Garvey, 532 U.S. 504 (2001). . . . . . . . . . . . . . . . . . . . 15, 28, 29, 42, 43, 44, 50, 58, 64

In re Mastercraft Record Plating, Incorporated, 39 B.R. 654 (S.D.N.Y. 1984). . . 42

Melun Industries, Incorporated v. Strange, 898 F.Supp. 995 (S.D.N.Y. 1992). . . 37

Michigan Family Resources, Incorporated v. Service Employees International Union Local 517 M, 475 F.3d 746 (6th Cir. 2007)(en banc). . . . . . . . . 27, 28, 33

Mobil Oil Corporation v. Independent Oil Workers Union, 679 F.2d 299 (3d Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Moses H. Cone Memorial Hospital v. Mercury Constr., 460 U.S. 1 (1983). . 30, 50

NF & M Corporation v. United Steelworkers of America, 524 F.2d 756
    (3d Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

National Post Office, Mailhandlers, Watchmen, Messengers and Grp. Leaders
    Division., Laborers International Union of Northern American., AFL-CIO v.
    U.S. Postal Service, 751 F.2d 834 (6th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . 41

New York Hotel and Motel Trades Council v. Hotel St. George, 988 F.
    Supp. 770 (S.D.N.Y. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

News America Publications, Incorporated Daily Racing Form Division v. Newark
    Typographical Union, Local 103, 918 F.2d 21 (3d Cir. 1990). . . . . . . . . . . . . 41

ODL Servs., Incorporated v. ConocoPhillips Company, 264 S.W.3d 399
    (Tex.App. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Oxford Health Plans LLC v. Sutter, _____ U.S. _____, 133 S.Ct. 2064
    (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Park Concrete, Incorporated v. Cunningham, 866 F.2d 283 (9th Cir. 1989). . . . . 32

Pine Valley Productions v. S.L. Collections, 828 F.Supp. 245 (S.D.N.Y. 1993). . 35

Rochester Tel. Corporation v. Commercial Workers of America, 340 F.2d 237
    (2d Cir. 1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

Storer Broadcasting Company v. AFTRA, Cleveland Local, 600 F. 2d 45
    (6th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Suffolk Chiled Development Center, Inc., 277 NLRB 1345 (1985). . . . . . . . . . . 55

Supreme Oil Company v. Abondolo, 568 F.Supp.2d 401 (S.D.N.Y. 2008). . . . . . 26

Tanoma Min. Company v. Local Union Number 1269, United Mine Workers of
    American, 896 F.2d 745 (3d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

The Connecticut Light and Power Company v. NLRB, 476 F.2d 1079 (2d Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53, 55

The General Contractors Assoc. of New York, Inc. v. The Metallic Lathers' Union, 1982 WL 2117, 113 LRRM 2626 (S.D.N.Y. 1982). . . . . . . . . . . . . . . 30

USW v. Enterprise Wheel and Car Co., 363 U.S. 593 (1960). . . . . . . . . . 26, 32, 36

United Paperworkers International Union, AFL-CIO v. Misco, Incorporated, 484 U.S. 29 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Valentine Sugars, Incorporated v. Donau Corp., 981 F.2d 210 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32, 33

Wal-Mart Stores, Incorporated v. Miller, 102 S.W.3d 706 (Tex.2003). . . . . . . . . 42

Wallace v. Buttar, 378 F.3d 182 (2d Cir.2004) . . . . . . . . . . . . . . . . . 44, 45, 51, 53

Way Bakery v. Truck Drivers Local Number 164, 363 F.3d 590 (6th Cir. 2004) .  28

Westerbeke Corporation v. Daihatsu Motor Company, Limited, 304 F.3d 200 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**STATUTES**

Federal Arbitration Act ("FAA"), 9 U.S.C. Section 1. . . . . . . . . . . . . . . . . . . . . . 26

NY CPLR §7509. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20, 23, 24, 35, 38, 39

NY CPLR §7511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 23

Section 10(a)(4) of the FAA, 9 U.S.C. Section 10(a)(4).. . . . . . . . . . . . . . . . . . . . 26

Section 301 of the Labor-Management Relations Act, 29 U.S.C. Section 185 (USPA-74). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 39, 73

## SUMMARY OF THE ISSUES

1.  Was there some evidence to support the Arbitrator's findings that the "transfer" and "notice" issues were before him for resolution?

2.  Did Pfizer waive its argument that the Arbitrator decided issues not before him by not raising these objections with the Arbitrator post-Award via a motion for modification pursuant to NY CPLR 7509 and 7511(c)(2)?

3.  Was the question -- Is the "notice" issue before the Arbitrator for resolution -- arguably submitted to and decided by implication by the Arbitrator and, if so, should the Court give that determination extreme deference?

4.  Since the definition of the term "Plan" was litigated, may Pfizer complain that the Arbitrator found that the term included the Wyeth retiree plan, as Pfizer contended, but did not include the Pfizer retiree plan, when there was no evidence or credited evidence to support such a finding?

5.  Was the Arbitrator arguably merely interpreting and apply the "notice" and "as early as possible" language of the "notice" provisions and not adding to the contract?

6.  Is this Court precluded from second-guessing the Arbitrator's resolution of the merits of the grievances?

## STATEMENT OF THE CASE

After Pfizer filed its petition to vacate in part and enforce only in part an arbitration award dated January 31, 2013, issued by Arbitrator M. David Vaughn ("Petition")(A-8, 24–118), Locals 95C and 143C (collectively, the "Union") jointly filed their response and counterclaims to the Petition.  (A-1293).[1]

In its first counterclaim, the Union alleged that the Arbitrator – in response to the Union's promptly-filed request to correct obvious typographical errors – re-issued his revised award with corrections on February 6, 2013, still with a January 31, 2013, date (but with an "r" on the last page to distinguish it from the uncorrected  award), facts that Pfizer has not disputed (A-1309 ¶28, A-1317-19, A-1320-1413; A-1434 ¶28).  Pfizer, however, incorrectly cites to the uncorrected award throughout its brief. *See, e.g.*, Pfizer Brief at 20-21, 47n.15.

The award, *as corrected*, can be found at (A-1320 through A-1413, A-2444¶5). Any references hereafter to the "Award," unless otherwise clear from the context, will be to, and will mean, the relevant arbitration award *as corrected* by the Arbitrator.

In its first counterclaim, the Union sought confirmation and enforcement of the

---

[1]References to the Joint Appendix will be cited as "(A-_____, _____¶_____);" to Pfizer's "Brief and Special Appendix for Petitioner-Appellant" as "Pfizer Brief at _____;" Pfizer's Special Appendix as "(SPA-_____)," to the Union's Special Appendix as "(USPA-_____);" using page numbers continuing consecutively following the Union's Brief; and to the arbitration transcript pages as "(T. _____)."

*corrected* Award *in its entirety*. (A-1312). Pfizer did not seek confirmation of the uncorrected, or corrected, Award *in its entirety*. (A-21).

In its second alternative counterclaim, the Union, assuming that the Court had jurisdiction,[2/] sought to have only part of the Award vacated and the matter then remanded to the Arbitrator for further proceedings. (A-1312).[3/]

Following full briefing on the parties' cross-motions for summary judgment, the district court denied both Pfizer's and the Union's efforts to vacate, in part, the Award. Instead, the district court granted the Union's first counterclaim by confirming the Award *in its entirety*. In doing so, it also granted, but only in part, Pfizer's motion for summary judgment, which sought only confirmation of part of the Award (A-21¶50)(several parts of the Award that, coincidentally, did not need

---

[2/]By agreement, the parties bifurcated the arbitration proceedings, reserving the remedy issues for later, raising some question as to whether the Award was sufficiently "final" so as to be appealable. (A-1323).

Following the Arbitrator deciding the grievances, at least in part for the Union, the parties have not been able to agree upon a remedy. Consequently, the Union timely invoked the Arbitrator's continuing jurisdiction. Once the Award has been confirmed and remanded, the Arbitrator will proceed to decide the remaining remedial issues. (A-2542).

[3/]In the proceedings below, the Union asserted, alternatively, that the Award was not final and, therefore, the district court did not yet have jurisdiction. The district court disagreed and proceeded to decide the entire matter. (SPA-8--9). The Union, on appeal, has not pursued the jurisdictional issue, or certain other matters, raised by its second counterclaim.

typographically corrected)(SPA-24). Thereafter, Pfizer filed this appeal.

## STATEMENT OF FACTS

### The Parties

Pfizer is the successor to Wyeth Pharmaceuticals ("Wyeth"). Wyeth was the former employer of the bargaining-unit members before Pfizer acquired Wyeth's stock in a merger transaction effective October 15, 2009. Local 95C represents employees at a Pfizer facility in Rouses Point, New York, and Local 143C represent employees at a Pfizer facility in Pearl River, New York. The Coordinated Bargaining Agreement, which covers multiple local unions, including Locals 95C and 143C, the Rouses Point local agreement, and the Pearl River local agreement, each were negotiated between the respective local unions and Wyeth prior to the merger transaction. The parties agree that Pfizer adopted and is bound by those Wyeth labor agreements. (A-1340).

### Bargaining History

The respective local unions have represented their bargaining-unit employees for decades. Over time, since Wyeth operated multiple facilities, these and several other local unions developed at least a 20-year practice of negotiating with Wyeth a series of "Coordinated Bargaining Agreements" through a joint council. These Coordinated Bargaining Agreements provided uniform terms for "big ticket"

economic issues such as wage-rates and benefits for bargaining-unit members across the participating facilities.   Local agreements negotiated separately by Locals 95C and 143C for their respective facilities would cover more localized issues not addressed by the Coordinated Bargaining Agreements. (A-1341).

On January 12, 2001, Local 95C, Local 143C, and a third Local that is not involved here, entered into a Coordinated Bargaining Agreement effective April 1, 2001, through March 31, 2008 (the "2001 Coordinated Bargaining Agreement"). The 2001 Coordinated Bargaining Agreement incorporated the Wyeth Group Insurance Program by reference and it directed that certain amendments be made to that Wyeth Program.  (A-1341-42).

While the 2001 Coordinated Bargaining Agreement was in effect, Wyeth unilaterally modified certain provisions of a component of that Program, the Wyeth Retiree Comprehensive Medical Plan.  The Union filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") in 2004 challenging Wyeth's unilateral changes to these retiree health benefits.  Since Michael Dougherty, Wyeth's chief labor counsel prior to his 2006 retirement, was uncertain of prevailing on this charge, Wyeth agreed to settle the matter by rescinding and delaying the implementation of these changes until January 1, 2006.  (A-1342, 2073-77).

Prior to the March 31, 2008, expiration of the 2001 Coordinated Bargaining

Agreement, the parties began early negotiations in 2007 for a successor Coordinated

Bargaining Agreement.    The ICWUC,[4/] together with Local 95C and a third,

uninvolved Local, signed a new Coordinated Bargaining Agreement on May 9, 2007

(the "2007/2008 Coordinated Bargaining Agreement").    The 2007/2008 Coordinated

Bargaining Agreement amended the 2001 Coordinated Bargaining Agreement and

was effective April 1, 2007 through March 31, 2014.    It directed that there be certain

amendments to the Wyeth Group Insurance Program effective January 1, 2008.    Local

143C's Pearl River Local Bargaining Agreement, which was effective January 16,

2008, through January 15, 2014, subsequently incorporated the 2007/2008

Coordinated Bargaining Agreement.    (A-1343).

The 2007/2008 Coordinated Bargaining Agreement contained what the

Arbitrator came to call the three (3) "Equivalency" Paragraphs or Provisions.    These

Three Paragraphs are at the center of this case.    They follow the introductory

language:

> "The Agreement concerning the Group Insurance Program and
> Retirement Plan dated March 21, 1969, as amended effective April 1,
> 1972, April 1, 1974, April 1, 1978, April 1, 1983; April 1, 1985, April
> 1, 1990, April 1, 1995, and April 1, 2001, among the parties, is hereby
> further amended effective April 1, 2007 to read as follows:

---

[4] Locals 95C and 143C are affiliated with the International Chemical Workers
Union Council (ICWUC). The ICWUC helped to coordinate the joint council's
negotiation of the Coordinated Bargaining Agreements.

Part A hereof sets forth the agreed-upon amendments to the Group Insurance Program with various effective dates.

Effective January 1, 2008, the Employer shall provide medical, dental, prescription drug, vision and life insurance benefits through the same Plans as those in effect for non-bargaining unit employees. Employees in the bargaining unit shall participate in such Plans in the same manner as do non-bargaining unit employees within Wyeth's U.S. operations. Employees shall be eligible for medical, dental, prescription drug, vision and life insurance benefits effective upon the employee's date of hire.

Employees in the bargaining units shall contribute and participate in such Plans at the same rates as do non-bargaining unit employees within the same wage categories in Wyeth's U.S. operations effective January 1, 2008. In subsequent years, employees in the bargaining units shall contribute and participate in such Plans at the same rates as are applicable to non-bargaining unit employees in the same wage categories.

It is agreed and understood that the Employer may modify the Plans and costs associated with them over the term of the Agreement, provided such modifications apply equally to non-bargaining unit employees. The Employer shall notify the Union of any changes in the Plans and/or changes in contribution rates as early as possible provided that such notification shall be provided prior to communication of such changes to employees and prior to open enrollment."

(A-1331 - 32).

The Parties disagree as to the circumstances under which the Equivalency

Provisions were negotiated and their intended scope, *i.e.*, does the term "Plans" mean both the *retiree*, as well as active *employee,* medical "plans;" and what do the Third Paragraph's prior "notice-to-the-Union" provisions "as early as possible" of "any changes" in the Plans before such communications to the employees mean and require.

Because the 2007/2008 negotiations took place prior to the October, 2009, Wyeth/Pfizer merger, Pfizer was not involved.  Pfizer did, however, call, as its witness at the arbitration, Michael Dougherty.

Following his 2006 retirement, Wyeth retained Dougherty as a consultant and chief spokesperson regarding the 2007 Coordinated Bargaining negotiations, though he was not involved in the subsequent Pearl River local negotiations, that incorporated the 2007/2008 Coordinated Bargaining Agreement into the new Local 143C local agreement.

According to Dougherty, one of Wyeth's priorities in the Coordinated Bargaining negotiations was to obtain authority to change "those benefits" unilaterally during the term of what became the 2007/2008 Coordinated Bargaining Agreement as long as the same benefits were provided to nonunion *employees*.  (A-1344).

A Wyeth document, an "AHT Authorization," requested the allocation of funds

-8-

for anticipated expenditures in connection with the 2007 Coordinated Bargaining negotiation. This document, which was <u>not</u> provided to the Union (A-1344), apparently indicated that the Union would be asked to:

> "Align with the group insurance benefits presently offered to nonunion *employees* of Wyeth..."

Co. Ex. 22. (A-1344)(emphasis added). The document, however, made no mention of *retiree* benefits. (A-2119–22).

According to Dougherty, consistent with this overall goal of equalizing *employee* benefits, Wyeth offered to provide the same 401(k) company-match for bargaining-unit *employee* contributions as had been provided for <u>non</u>-bargaining unit *employee* contributions for several years, as a "quid pro quo" for the Union's agreement to permit Wyeth to change unit-*employee* benefits unilaterally. (A-1344-45).

According to the Union team, while Wyeth offered the 401(k) matching contribution as a "quid pro quo" for the Equivalency Provisions, the Equivalency Provisions were to apply only to medical benefits provided to bargaining-unit *employees* while they were actively employed and <u>not</u> to their post-retirement medical benefits. In other words, only to *employee* benefits, <u>not</u> to *retiree* benefits. They further testified that post-retirement medical benefits were <u>not</u> discussed in the

2007/2008 Coordinated Bargaining negotiations.  (A-422, 493, 510, 511, 512, 650, 1345).

Because of this dispute over whether the Equivalency Provisions covered just the active *employee* medical plan, or also the plan for health benefits once employees retired--and thereby also waived the Union's rights to bargain about changes in future *retiree* medical benefits--the waiver issue and "Plan" definition in the Equivalency Provisions became important issues in the arbitration. (A-1926-28, 2008-11).

<u>The Merger</u>

The Pfizer/Wyeth merger agreement required that employees subject to collective-bargaining agreements would receive compensation and benefits in accordance with the applicable collective-bargaining agreement. (A-1348).

On or about the effective date of the merger, Pfizer distributed to "legacy" Wyeth bargaining-unit members, *i.e.*, former Wyeth employees now Pfizer employees, a "One Sheet" summary stating that:

> "You will remain subject to your collective bargaining agreement.  On Day One your compensation and benefits will not change.  Your pay, grade and title remains the same.  You will continue to be paid and receive benefits through the same plans, systems and payroll as were in effect prior to the close of the merger.

> \*          \*          \*          \*

> There are no changes to your retiree medical plan eligibility."

-10-

(A-1348–49).

<u>Transfer of Wyeth "Legacy" Employees to Pfizer Medical Plan</u>

At some point prior to July 1, 2010, Pfizer appears to have decided to retreat from the above representations and take unilateral steps toward covering all U.S. employees, but only some retirees, under the same Pfizer welfare benefit plans. Pfizer apparently determined that it would cover "legacy" Wyeth employees, who would later retire on or *after* January 1, 2012, by <u>Pfizer's</u> post-retirement medical plan ("Pfizer Retiree Medical Plan,") instead of by the <u>Wyeth</u> Retiree Medical Plan (though <u>pre</u>-2012 "legacy" Wyeth retirees would continue to remain under <u>Wyeth's</u> Retiree Medical Plan). (A-1349, 1351).

The Wyeth and Pfizer retiree medical plans differ radically in several significant respects. Under the Pfizer retiree plan, retirees will have significantly less benefits and significantly more costs. Unlike under the Wyeth plan, after a period of time, no benefits may be paid at all by Pfizer.[5] Former Wyeth employees, as well as

---

[5]Section 2.01 of the Wyeth Plan provides that an employee "shall be eligible for participation in the Retiree Medical Program if the employee terminates employment at or after age 55 with 10 or more years of vesting service." (Co. Ex. 23) (A-1350, 2123). In contrast, the slide presentation used to explain upcoming changes indicated that "legacy" Wyeth employees will be eligible for post-retirement medical benefits under the <u>Pfizer</u> Retiree Medical Plan only if they have already attained age 55 with 10 years of service by December 31, 2011 or if they retire from Pfizer at or after age 55 with 15 years of service after age 40. (Co. Ex. 24)(A-1350, A-2187).

-11-

Wyeth "legacy" employees, who retired from Pfizer *prior* to January 1, 2012, would continue to receive post-retirement medical benefits through the <u>Wyeth</u> Group Insurance Program, even though the Wyeth "legacy" employees, who retire from Pfizer on or *after* January 1, 2012, would be transferred to and covered by the radically-different Pfizer plan.  (A-1351).

<u>Pfizer's Communication of Upcoming Benefit Changes<br>to Union and Employees</u>

Pfizer's initial communication to the Union indicating that the Company intended to make changes to certain employee benefits consisted of an e-mail sent by

---

While the Wyeth Retiree Medical Plan does not limit the total amount that Wyeth or its successor may be required to contribute toward the cost of such benefits for each retiree, the Pfizer plan utilizes a "Retiree Medical Subsidy" ("RMS") Account.  For each employee, a RMS balance is calculated at retirement based on years of service *only after age 40*, up to a maximum of 25 years of service.  Based on that amount, a "target" RMS annual subsidy is calculated.  Retirees and their dependents are responsible for the difference between the total cost of benefits and the RMS annual subsidy.  Once the RMS account is depleted, Pfizer retirees are responsible for the *entire* cost going forward.  (A-1350, A-653-55).  Thus, while Wyeth "legacy" retirees, who retire on or *before* December 31, 2011, may <u>never</u> have an RMS limit to how Pfizer will contribute to their retiree health insurance, Wyeth "legacy" retirees, who retire on or *after* the next day, January 1, 2012, will.  (A-593).

In contrast, the Wyeth Retiree Medical Plan incorporates a chart through which the cost to the retiree is calculated based on age, *entire* years of service, and the retiree's wage rate at the time of retirement.  Under this chart, retirees who are older and/or have more years of service pay less than retirees who are younger or have fewer years of service.  In addition, retirees who were in lower wage bands at the time of retirement pay less than those in higher wage bands.  (U. Ex. 15 and 16)(A-1350–51, A-1799, 1811).

Kevin Gonzalez, Pfizer's Senior Director for Mergers and Acquisitions, to ICWUC's (then) Secretary-Treasurer Gregory Villanova on July 1, 2010, indicating Pfizer's desire for a "*quick call* to discuss certain future changes being made to the Health & Welfare benefits for legacy Wyeth *employees*..." (A-1351-52, 2111-13) (emphasis added). However, no documents were provided *to the Union* detailing those changes before August 16, 2010. (A-1354). Villanova did not recall participating in that call and Pfizer failed to submit any documentation showing that he responded to the email, that it ever provided Villanova with the call-in number for the conference call, the agenda for the call, or show a summary of what was discussed in the call. (A-1052-54, 1408-10).

On the other hand, Pfizer distributed directly to employees written details of the upcoming changes to future retiree medical benefits in a document entitled "Understanding the Upcoming Changes to Your Benefits," sometimes referred to as the "one sheet," or by a Power Point slide presentation at Rouses Point on July 13, 2010, and at Pearl River between July 27 and August 9, 2010, though there was still considerable confusion whether any of the changes applied to the unionized employees. (A-657n.14, 658n.16, 661) (A-1353).

There was no credited evidence that these details were distributed to the Union before August 16, 2010. (A-1353-54).

-13-

<u>The Grievances</u>

Because Pfizer had not informed the Union of the upcoming future retiree health benefit changes before informing the employees and there was confusion at both Locals as to whether Pfizer's unilateral changes to future retiree benefits would even apply to the former Wyeth employees, neither Local Union immediately filed grievances over these unilateral changes. (A-641-44). During the arbitration, there was considerable litigation over whether the grievances were even timely, though, eventually, the Arbitrator found that both Locals' grievances were timely and Pfizer has not challenged that portion of the Award. (A-21¶50(a)).

Local 95C's grievance stated:

"The Company has notified the union that effective on or about January 1, 2012 employees will retire under the Pfizer retirees medical plan. It is the union's position that this is a unilateral change to the current employees benefits."

(A-1357, 1713). Local 143C's grievance similarly stated:

"The Company notified the Union that effective on or about January 1, 2012 employees will retire under the Pfizer Retiree Medical Plan. It is the Union's position that this is a unilateral change to current employees benefits."

(A-1358, 1717).    Pfizer responded in part, acknowledging that it understood the scope of the grievance:

"The parties met at the 3rd step of the grievance procedure. The Union

-14-

confirmed that the *scope of the grievance* covers presently active Legacy Wyeth (Pearl River) union colleagues *that retire after January 1, 2012* and, if eligible for retiree medical coverage, *will receive it through **Pfizer's** retiree medical plan and not under the Legacy **Wyeth** retiree medical plan....*"

(A-1358-59, 1717) (emphasis added).    By agreement, both grievances were consolidated at step 4 and for arbitration.(A-482-83, 1321).

There was little evidence during the arbitration as to what was discussed by the parties during the pre-arbitration/grievance procedure.  Instead, Pfizer improperly has attempted to "supplement" the arbitration record about disputed facts through the Local Rule 56.1 procedure.  Unless there were factual-findings made by the Arbitrator as to what occurred during the pre-arbitration grievance procedure, attempting to supplement the arbitration record through the 56.1 procedure is improper.[6/] (A-2504-05 ¶¶ A and B, 2517-19) (USPA-80).

<u>The Arbitration</u>

The arbitration was held on the days as stated by Pfizer in Orangeburg, New York. (A-1321).  However, as explained more fully below, the issues before the Arbitrator were not so narrow as Pfizer suggests, nor were they limited by a simple statement of issues, particularly given that the Union submitted a "Union Pre-Hearing Statement on Recognition Clause" and more fully explained its position on the issue

---

[6/]*See,* <u>Garvey</u>, *infra* at 509-10.

throughout the proceedings (A-396, 397-408, 402, 406, 1926-28), while Pfizer also submitted a written response to more fully explain its position on the issue. (A-2008-11).

Both grievances raised essentially some of the same unilateral-change issues as were raised by similar unfair labor practice charges filed by the Union with the NLRB in 2011, though those charges were withdrawn by the Union before any official prosecutorial determinations were made on behalf of the NLRB General Counsel. (A-1976, 1984, 1988, 1990). Pfizer submitted as arbitration exhibits copies of those unfair labor practice charges, their withdrawals, and its position statements to the NLRB Regional Director, while the Union argued that the Arbitrator should give no weight to those matters. (A-681-83, 1976, 1984, 1988, 1990, 1992-2006).

Pfizer agreed that, where a collective-bargaining agreement includes a recognition clause and the Union claims that the employer violated its *contractual* duty to bargain by implementing a unilateral change, the Arbitrator is empowered to make "essentially the same determination" that the NLRB would make in evaluating a possible statutory violation. The parties essentially agreed that post-retirement medical benefits provided to future retirees are a mandatory subject of bargaining under the National Labor Relations Act and, if an employer implements a unilateral change to such benefits, such an action would violate its contractual and statutory

-16-

duty to bargain *if* the union had not waived its right to bargain. (Co. Ex. 11)(A-1397, 2008-11).

Consequently, given that the changes were acknowledged to be significant, the arbitration focused not so much on what the unilateral changes were as a result of the transfer of post-2012 future retirees to the Pfizer retiree plan, but on whether the Union -- by reason of the Equivalency Provisions -- had waived its right to bargain about *any* unilateral changes, such as the transfer or the resulting changes because of that transfer.  In part, this was as a result of the parties agreement to bifurcate the arbitration between liability and the remedy stage, as well as on Pfizer and one of its main witnesses' acknowledgment that, but for the Equivalency Provisions, the employer would have had an obligation, as shown below, to bargain about the unilateral changes at issue. (A-1323, 2008-11)(T-409)(A-503).

During the arbitration, the Union maintained that the term "Plans" in the Equivalency Provisions, which Wyeth drafted (A-522, 534), referred to the Wyeth plans for *active employees'* health benefits, not to Wyeth's *retiree* health plan, or that the term "Plans" was at least ambiguous and, therefore, not sufficiently a "clear and unmistakable" waiver of the Union's right to bargain over matters involving plans regarding future retiree medical benefits.  (A-649-50, 669-81).  Pfizer, however, argued that the term "Plans" in the Equivalency Provision included the Wyeth retiree

medical plan, though it never argued it included the Pfizer plans. (A-1136-38, 1411).

During its case-in-chief, the Union established that the (then) ICWUC Secretary-Treasurer, Greg Villanova, whose office was in Akron, Ohio, was its "point" person for receiving the "notices" required by the Equivalency Provisions and that he had not received those "notices" prior to August 16, 2010 (A-511, 1354), even though Pfizer gave written, detailed information directly to employees as early as July 13, 2010. (A-1352-53). There was testimony elicited later by Pfizer's counsel from its witness, Kevin Gonzalez, on this same topic. (A-1103).

In its post-hearing brief at 35-41 (A-675-81), the Union argued that the word "Plan" in the Equivalency Provisions either did not mean the Wyeth *retiree* medical plan, or it was sufficiently ambiguously so as not to "clearly and unmistakably" waive the Union's bargaining rights; and it argued that Pfizer had not met its "notice" obligations under the Equivalency Provisions and, therefore, Pfizer had failed to establish its affirmative defense. In responding to an argument raised at the hearing, the Union argued that it did not have to file a specific grievance over Pfizer's failure to give timely notice, but need only challenge and rebut Pfizer's defense that it did give such notice, since that was a *de facto* affirmative defense that was Pfizer's burden to carry. (A-680-81).

In Pfizer's post-hearing arbitration brief, Pfizer argued that the Equivalency

-18-

Provisions extended to the Wyeth retiree plan and, thus, waived the Union's right to bargain (A-1109-12); it asserted that Gonzalez gave Villanova notice of the changes in July (A-1103); and that the waiver of the right-to-bargain is shown by Pfizer's obligation to first give the Union notice of these changes. (A-1112-13).

Thereafter, Pfizer had a full opportunity in its post-hearing reply brief to respond to the Union's arguments. (A-1006). Pfizer re-affirmed its position that the word "Plan" includes the <u>Wyeth</u> retiree plan (A-1137-38). In reference to the "notice" issue, Pfizer did <u>not</u> claim that the Arbitrator was without any authority to decide the notice-related issues. Instead, Pfizer first claimed, factually, that it had complied with the "notice" requirement. Alternatively, it argued that the Union had not filed a specific grievance to raise the timeliness issue, thereby squarely putting this procedural "notice" issue before the Arbitrator for consideration. (A-1145-46).

In its post-hearing arbitration reply brief, the Union further responded to Pfizer's position and explained why the term "Plan" did not "clearly and unmistakably" include the Wyeth *retiree* plans (A-1046-51), and argued that, even if it does, why Pfizer failed to give adequate "notice." (A-1051-54).

<u>The Award</u>

Following the simultaneously-filed post-hearing briefs and reply briefs, the Arbitrator issued his Award on January 31, 2013. (A-634, 1006, 1061, 1127, 23).

-19-

When the Union noticed several apparent typographical errors, it promptly filed a request for modification on February 5, 2013, as permitted by NY CPLR Section 7509 etc. (A-1317). On February 6, 2013, the Arbitrator reissued his award, corrected those errors, placing an "r" on the last page so as to differentiate the document. (A-1318-19, 1320-1413).

In the Award, the Arbitrator summarized the parties' positions. He explained that Pfizer maintained that it had neither a statutory, nor contractual, duty to bargain over its transfer of bargaining-unit members, who retire on or after January 1, 2012, to the Pfizer Retiree Medical Plan because the Equivalency Provisions demonstrate that the Union "clearly and unmistakably" waived its right to bargain over such changes to the Wyeth Retiree Medical Plan during the term of the 2007/2008 Coordinated Bargaining Agreement. (A-1397). The Arbitrator rejected Pfizer's argument that he should consider the disposition by the NLRB of the parallel unfair labor practice charges, because there was no opinion, or written analysis, or evidentiary hearing by the NLRB and he could only speculate as to the NLRB's reasoning. (A-1398-99).

The Arbitrator explained that the parties agreed that the determination of whether Pfizer violated its contractual duty to bargain, "when it unilaterally changed the post-retirement medical benefits ... by transferring them to the Pfizer Retiree

Medical Plan, hinges on whether, and to what extent, the Union waived its right to bargain over post-retirement medical benefits in the 2007/2008 Coordinated Bargaining Agreement." (A-1399). He identified the key questions to be resolved as:

> "(1) whether the Equivalency Provisions cover 'Plans' within the Wyeth Group Insurance Program that provide post-retirement medical benefits for Future Retirees; and if so, (2) whether the conditions described in the Equivalency Provisions for the exercise of that authority were satisfied."

(A-1399). He found that both the "transfer" and "notice" issues were before him. (A-1408, 1410).

While the Arbitrator found that the term "Plan" includes the <u>Wyeth</u> Retiree Medical Plan, so that the Union waived its right to bargain over future changes to the <u>Wyeth</u> retiree plan, he also found that this waiver was conditioned on certain requirements being met, including the employer satisfying the "notification" obligations set forth in the Third Paragraph. (A-1406-07). He found that, if those conditions were not met, the Union's conditional waiver would not be effective. (A-1406-07).

While the Arbitrator found that Villanova participated in a short July 8, 2010, conference call with Gonzalez, he also factually concluded that, while it was:

> "...likely that the Company notified Mr. Villanova of its intention to transfer future retirees to the Pfizer Retirees Medical Plan, there is insufficient basis on which to conclude that it provided notice of the specific changes associated with the transfer. In addition, I am not

-21-

> convinced that a conference call scheduled five days before the transfer
> was communicated to employees, satisfied the requirement that the
> Company notify the Union 'as early as possible.'"

He rejected any suggestion that Pfizer could transfer its affirmative "notification" obligation to the Union by requiring the Union to inquire about the specifics of the benefit changes accompanying any transfer (A-1409-10).

The Arbitrator emphasized that, throughout the proceedings, Pfizer had maintained that the "Plans" referenced in the Equivalency Provisions included the Wyeth Retiree Medical Plan. He concluded that the Pfizer Retiree Medical Plan was not a "Plan" within the meaning of the Equivalency Provisions, primarily because there was no evidence to support such a conclusion. (A-1411). Therefore, he concluded that Pfizer's unilateral transfer of bargaining-unit members, who retire after January 1, 2012, to the Pfizer plan, was not authorized by the Equivalency Provisions. (A- 1411).

The Arbitrator retained jurisdiction pending resolution of the remedy issues. (A-1413). Thereafter, at the Union's timely request, he extended his jurisdiction due to these judicial proceedings. (A-2542).

## SUMMARY OF ARGUMENT

So long as there is some evidence to support an arbitrator's findings, including

-22-

his findings that issues and sub-issues were before him for resolution, the Judiciary must give extreme deference to such findings and it may not disturb those decisions despite allegations that they rest on factual errors or misinterpret the parties' agreement if he is even arguably construing or applying the contract. The fact that a reviewing court is convinced he committed serious error, or engaged in improvident or silly fact-finding does not suffice to overturn his decision.

Here, there is at least some evidence that both the "transfer" and "notice" issues were before the Arbitrator. The grievances themselves raised the "transfer" issue. Contrary to Pfizer's misconstruing his statement, consideration of Union Counsel's complete opening statement on the matter arguably shows that he did not waive the "transfer" issue raised by the grievances. Pfizer's suggestion, or "hint" that he also dropped the "notice" issue is another misconstruction of Union Counsel's statements and is belied by both parties' subsequent treatment of the "notice" issue in their respective post-hearing briefs and reply briefs.

Pfizer had a post-Award procedure by which it could bring its objection before the Arbitrator for consideration, so as to assert that these two issues were not properly before him, but failed to exhaust this remedy and, thereby, waived this objection. NY CPLR 7509 and 75011(c)(2). Therefore, it may not raise it before this Court.

Since there is at least some evidence that the term "Plan" in the Equivalency Provisions only meant the Wyeth plans and there is no evidence that it meant the Pfizer plans, the Arbitrator's finding may not be disturbed. Pfizer was not prejudiced on this issue based on what did, or did not, occur during the grievance procedure. There was no fact-finding by the Arbitrator on what occurred during the grievance procedure on that "transfer" issue and Pfizer may not add to the arbitration record on that issue through the Local Rule 56.1 procedure.  Also, Pfizer failed to exhaust its remedies by not raising any claims of prejudice before the Arbitrator, as it could have done, as part of a motion for modification under NY CPLR 7509, etc.

The Arbitrator did not "add to" the "any changes in the Plans" and "as early as possible" notification requirements, but merely interpreted and applied those provisions to the facts and circumstances of this case.  If the Award can be so interpreted, it must be so interpreted so as to uphold the enforceability of the Award.

## LAW AND ARGUMENT

### I.  The Review Standards

#### A.    Summary judgment standard

A petition to confirm or vacate an arbitration award should be treated as akin to a summary judgment motion.  Summary judgment may not be granted unless all

of the submissions show that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.   The Court must view all facts in a light most favorable to the non-moving party. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006);  District Council 1707 v. Association of Black Social Workers Day Care, 2010 WL 1049617 (S.D.N.Y. 2010).

B.    The standard of review of labor arbitration awards is one of the narrowest known in the law.

Normally, confirmation of an arbitration award is a summary proceeding that "merely makes what is already a final arbitration award a judgment of the court..." The Court must confirm and enforce the Award, unless it is vacated, modified, or corrected.   Absent vacatur, partial vacatur, or modification, the Award must be confirmed.   Gottdiener, *supra* at 110.   An "arbitrator's rationale for an award need not be explained," and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case.   *Id.*   Only "a barely colorable justification for the outcome reached" by the arbitrator is necessary to confirm the Award.   *Id.*; Landy Michaels Realty Corp. v. Local 32B-32J, SEIU, 954 F.2d 794, 797 (2d Cir. 1992).

Since this case arises under Section 301 of the Labor-Management Relations Act, 29 U.S.C. Section 185 (USPA-73)(A-9,¶2, A-1294,¶2)(A-1305,¶2, A-1431,¶2),

-25-

federal common law developed pursuant to Section 301 applies.  Beth Israel Med.

Ctr. v. 1199/S.E.I.U. United Healthcare Workers , 530 F. Supp. 2d 610, 614

(S.D.N.Y. 2008).[7/]

_____While the "arbitrator's rationale for an award need not be explained," *see* USW

v. Enterprise Wheel & Car Co., 363 U.S. 593, 598 (1960); Landy Michaels Realty,

*supra* at 797, any ground for the decision, even if it can only be inferred, is sufficient

to justify confirmation.  Gottdiener, *supra* at 110.  When an arbitrator does give a

rationale, he:

> "...need only explain his reasoning 'in terms that offer even a barely
> colorable justification for the outcome reached.' Andros Compania
> Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 704 (2d Cir.1978)."

Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers, 47 F.3d 14,

---

[7/]The substantive federal common law fashioned under § 301 is "analytically distinct" from the provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. Section 1 etc., and it would be error to collapse the analysis under the two statutes. Thus, the FAA is no longer directly applicable to actions to enforce labor arbitration awards brought pursuant to § 301 of the LMRA.  Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 222 (2d Cir. 2002).  Nevertheless, courts still may look to the FAA for guidance when developing the common law under Section 301. Supreme Oil Co. v. Abondolo, 568 F.Supp.2d 401, 406n.2 (S.D.N.Y. 2008); *cf.*, Oxford Health Plans LLC v. Sutter, _____ U.S. _____, 133 S.Ct. 2064, 2068, 186 L.Ed. 2d 113 (June 10, 2013) (In holding that an arbitrator was found not to have "exceeded [his] powers" under Section 10(a)(4) of the FAA, 9 U.S.C. Section 10(a)(4), the Supreme Court nevertheless relied on three of its prior decisions regarding the scope of a *labor* arbitrator's authority, whose authority was addressed under Section 301 of the LMRA).

17 (2d Cir. 1995).

In applying these standards in an action to vacate, confirm, modify, or enforce a labor arbitration award, *extreme,* "nearly total deference" must be given by federal courts to an arbitrator's award.  Local 97, IBEW v. Niagara Mohawk Power Corp., 196 F. 3d 117, 125 (2d Cir. 1999); ConAgra Foods, *infra*.

While the Second Circuit recognizes that "nearly total deference" must be given to a labor arbitrator's factual and legal conclusions, it has not recently re-visited the standard to be applied, though more recent Supreme Court decisions have refined this policy of extreme deference.  The Sixth Circuit, acting *en banc*, however, more recently has examined the Supreme Court's refinement and has re-articulated its standard to bring it within this development in the law.  Michigan Family Resources, Inc. v. SEIU, Local 517M, 475 F.3d 746 (6h Circ. 2007 (*en banc*).

The Union urges the Second Circuit to consider adopting the Sixth Circuit's reading of current Supreme Court law on these matters, *see, e.g.,* Sutter, *supra*, though even current Second Circuit law also supports the Union's position here. Under this approach, only three questions need now be addressed. ConAgra Foods, Inc. v. United Steel, Paper, etc., 2011 WL 570171, 190 LRRM 2550 (E.D.Tenn. 2011)(emphasis in original):

"A party seeking to vacate an arbitration award faces a heavy burden, because the district court's jurisdiction is *extremely* limited: '[a] court's review of an arbitration award "is one of the narrowest standards of judicial review in all of American jurisprudence."' <u>Way Bakery v. Truck Drivers Local No. 164,</u> 363 F.3d 590-593 (6th Cir. 2004) [note omitted]. In deciding whether to confirm or vacate a labor arbitration award, courts must ask:

> 'Did the arbitrator act 'outside his authority' by resolving the dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator 'arguably construing or applying the contract'? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made 'serious' 'improvident' or 'silly' errors in resolving the merits of the dispute.' <u>Michigan Family Resources, Inc. v. Service Employees Int'l Union Local 517 M</u>, 475 F.3d 746, 753 (6th Cir. 2007) (*en banc*)."

Thus, a Federal court's role in this area is not just limited, it is "very limited...," <u>Michigan Family Resources</u>, *supra* at 752, *quoting from* <u>Major League Baseball Players Ass'n v. Garvey</u>, 532 U.S. 504, 509 (2001), with "nearly total deference" given to the Award. <u>Niagara Mohawk Power</u>, *supra* at 125.

Here, the second inquiry is not relevant to Pfizer's complaints. Reduced to their core, Pfizer's only real claims are (1) that the "transfer" and "notice" issues were not before the Arbitrator for resolution and (2) that, even if they were, his interpretation of the Equivalency Provisions were in error and effectively modified

-28-

the labor contract.  The Union will show that, on these issues, there was at least, and even more than, some evidence and a "barely colorable" justification for the Arbitrator addressing and deciding the issues and deciding them favorably for the Union.

If one or both matters arguably were barely colorably justifiably before the Arbitrator for resolution, the Court, then, is not to review his resolution of those matters; it is not to review the merits of the grievance, or even attempt to correct any arguably serious, or even silly, arbitral factual findings or errors.  Garvey, *supra* at 509.  Only when there is no evidence to support a factual finding may that finding be stricken.  *See, e.g.,* Storer Broadcasting Co. v. AFTRA, Cleveland Local, 600 F. 2d 45, 48 (6th Cir. 1979); Clemons v. Dean Witter Reynolds, Inc., 708 F. Supp. 62, 63 (S.D.N.Y. 1989).

C.    This Court must defer to the Arbitrator's findings of what issues and sub-issues were before him.

1.    The extreme deference that this Court must give to the Arbitrator's findings extends to his view of the "scope of" the grievance and/or submission before him.

Pfizer contends that the Arbitrator acted outside the scope of the grievances before him regarding the "transfer" and "notice" issues.  Obviously, by addressing and deciding these issues, the Arbitrator did not see it that way.  Moreover, any

doubts must be resolved in favor of arbitrability as part of the general rule of giving

nearly total deference to the Arbitrator's rulings:

> "In determining whether the arbitrator exceeded his jurisdiction, we resolve all doubts in favor of arbitration.  <u>Moses H. Cone Memorial Hosp. v. Mercury Constr</u>., 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)."

<u>Valentine Sugars, Inc. v. Donau Corp</u>., 981 F.2d 210, 213 (5th Cir. 1993).  This

principle is merely an extension of the "nearly total deference" a court must give to

an arbitrator's findings and extends to the arbitrator's interpretation of what issues

were submitted for resolution. <u>The General Contractors Assoc. of New York, Inc. v.</u>

<u>The Metallic Lathers' Union</u>, 1982 WL 2117, 113 LRRM 2626, 2628 (S.D.N.Y.

1982).[8/]    A failure to defer to an arbitrator's interpretation of the submission is

inconsistent with the extreme deference that must be given to his factual and legal

findings.  <u>Id.</u>, 113 LRRM at 2628.

    As the district court's sister court stated, in quoting from <u>Johnston Boiler</u>, "'the

---

[8/]<u>Brotherhood of Locomotive Engineers and Trainmen v. United Transportation Union</u>, 700 F.3d 891, 902 (6th Cir. 2012);  <u>Equitable Resources, Inc. v. United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Int'l Union</u>, 621 F.3d 538, 549 (6th Cir. 2010).  The Second Circuit follows this standard in Section 301 proceedings, as indicated by its citation in <u>CSX Transp., Inc. v. United Transportation Union</u>, 950 F.2d 872, 877 (2d Cir. 1991), to <u>Johnston Boiler Co. v. Local Lodge No. 893, Int'l Brotherhood of Boilermakers</u>, 753 F.2d 40, 43 (6th Cir. 1985).

presumption of authority that attaches to an arbitrator's award applies with equal force to his decision that his award is within the submission."  CSX Transp., Inc. v. United Transportation Union, 765 F.Supp. 797, (W.D.N.Y. 1991), *rev'd on other grounds*, 950 F.2d 872 (2d Cir. 1991).  Indeed, "[a]ny doubts about the scope of the submission agreement should be resolved in favor of coverage."  Kurt Orban Co. v. Angeles Metal Systems, 573 F.2d 739, 740 (2d Cir. 1978).

Moreover, the "language of arbitration demands should not be subjected to the same strict standards of construction that would be applied in formal court proceedings." *Id*.  The courts have not focused on whether subsidiary issues are within the submission, but on whether the general, overall dispute is within the submission:

> "An arbitrator's authority is not strictly confined to the 'technical limits of the submission.' Champion Int'l Corp. v. United Paperworkers Int'l. Union, 779 F.d 2$^d$ 328, 335 (6th Cir. 1985).  '[T]he extraordinary deference given to an arbitrator's ultimate decision on the merits applies equally to an arbitrator's threshold decision that the parties have indeed submitted a particular issue for arbitration.' *Id*.  Thus, an arbitration award may not be overturned unless it is 'clear' the arbitrator 'exceeded the scope of the submission.' *Id.*; *see also,* Int'l Chemical Workers Union Local No. 566 v. Mobay Chemical Corp., 755 F.2d 1107, 1110 (4th Cir. 1985) (holding that the scope of the issues submitted for arbitration may be broadened by the conduct of the parties during an arbitration)."

International Association of Machinists and Aerospace Workers v. Tennessee Valley

Authority, 155 F.3d 767, 772 (6th Cir.1998)(herein, "TVA").  If the issue submitted is broad -- as here -- an arbitrator has "the power to do whatever was necessary to resolve any disputed matter arising out of" the dispute.  Valentine Sugars, *supra* at 213.

This "deferential standard protects the judiciary from having to determine, on a case-by-case basis, the precise scope of a submission in the countless disputes that regularly occur in the course of industrial self-government." Brotherhood of Locomotive Engineers, *supra* at 902; Park Concrete, Inc. v. Cunningham, 866 F.2d 283, 285-86 (9th Cir. 1989); Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 302 (3d Cir. 1982).  In addressing an arbitrator's view of the scope of the issues before him, any doubts as to his reasoning and opinion must be resolved in favor of enforcing the Award:

> "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is <u>not</u> a reason for refusing to enforce the award."

Enterprise Wheel, *supra* at 597-98. (emphasis added).  As the Sixth Circuit has explained:

> "But what of the deference due to an arbitrator's interpretation of the issues submitted to him? By what standard are courts to review a party's claim that an arbitrator exceeded his authority because he decided issues the parties did not submit to him, or relied on materials

-32-

the parties did not present? Although <u>Michigan Family</u> was silent on this matter, our case law is clear that an arbitrator's authority is not strictly confined to the 'technical limits of the submission.' <u>Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth</u>., 155 F.3d 767, 772 (6th Cir.1998) (internal quotations and citation omitted). This court has reasoned:

> 'Considering the strong presumptions in favor of a party's right to arbitration and the extent of an arbitrator's authority, it would be a strange and grudging interpretation of [the] Steelworkers Trilogy to demand that arbitrators stay narrowly within the technical limits of the submission....' [T]he presumption of authority that attaches to an arbitrator's award applies with equal force to his decision that his award is within the submission."

<u>Johnston Boiler</u>, *supra* at 43. A Texas federal district court succinctly summed up its limited role in such proceedings:

> "The test is whether the award, *however arrived at*, is rationally inferable from the contract. [A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." <u>Am. Laser Vision</u>, 487 F.3d at 259 (internal quotation marks and citations omitted); *see also,* <u>Apache Bohai Corp. LDC v. Texaco China BV</u>, 480 F.3d 397, 404-05 (5th Cir.2007) (citations omitted). In deciding whether an arbitration panel exceeded its authority as a basis for vacatur under the FAA, *the district court resolves all doubts in favor of arbitration*. <u>Executone Info. Sys., Inc. v. Davis</u>, 26 F.3d 1314, 1320-21 (5th Cir.1994) (citing <u>Valentine Sugars, Inc. v. Donau Corp</u>., 981 F.2d 210, 213 (5th Cir.1993)). In reviewing an award, *a court is not limited to the panel's explanation of the award*. *Id*. at 1325. A district court " '*looks only to the result reached*."

<u>Halliburton Energy Servs., Inc. v. NL Indus</u>., 553 F. Supp. 2d 733, 753-54 (S.D. Tex.

2008)(emphasis added).

Here, there is no challenge to the Arbitrator's authority to decide the grievances. Instead, Pfizer argues that the Union limited the scope of the grievances based in part on Union Counsel's various statements *to the Arbitrator*. The Arbitrator's view, then, is particularly important in resolving the questions as to the scope of the subsidiary issues before him.

The question, here, then, is whether Pfizer can meet its very heavy burden to overcome the strong presumption that the Arbitrator was vested by the grievances with authority to resolve the scope of "the dispute" before him. TVA, *supra* at 772. The Union will show that it cannot. In order to resolve "the dispute," the language in a grievance should not be read so narrowly so as to defeat an award based on semantic differences in phrasing of an issue. CSX, 765 F.Supp. at 805-06.[9]

> 2. <u>When a party may, but fails to, timely object to an arbitrator that he allegedly had decided issues not before him, it has waived those objections</u>.

Just as an employee may be precluded from judicially challenging an

---

[9]Curiously, the issue in <u>CSX</u> -- *i.e.*, whether CSX *unilaterally* could dispose of its rail lines without first bargaining with that union -- is somewhat similar to the issue here -- whether Pfizer *unilaterally* could destroy bargained-for healthcare rights for future retirees without bargaining. CSX, 950 F.2d at 877.

arbitration award, when he has failed to exhaust both his grievance and his internal-union appeal remedies, *see*, *e.g.*, Clayton v. UAW, 451 U.S. 679 (1981), so too should Pfizer be precluded from seeking to modify the Award without first having sought such relief *from the Arbitrator*.  When an employer fails to raise a defense, that it could and should have raised with the Arbitrator, it should not be permitted to raise that defense for the first time in court.  New York Hotel & Motel Trades Council v. Hotel St. George, 988 F. Supp. 770, 778 (S.D.N.Y. 1997).  Here, Pfizer could have raised both of the "notice" and "transfer" lack-of-authority issues with the Arbitrator, even after issuance of the Award.

Under New York arbitration law, Pfizer had 20 days after issuance of the Award *to petition the Arbitrator* to modify his Award by deleting those portions of the Award that Pfizer claims were outside the Arbitrator's jurisdiction.[10/]  Even after the Award on liability was issued,  the Pfizer still could have moved -- but did not --to

---

[10/]Under NY CPLR Section 7509, an arbitrator upon written application of a party may modify an award on the grounds stated in Section 7511(c).  (USPA-81-83). Section 7509 is applicable to labor arbitration proceedings.  Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261, 912 F.2d 608 (2d Cir. 1990).  One  ground is that the arbitrator has awarded on a matter not submitted to him, the contention Pfizer raises here.  NY CPLR Section 7511(c)(2).  (USPA-83). By statute, these provisions have partially modified the *functus officio* doctrine, *see, e.g.*, Levine v. Klein, 70 A.D. 2d 532, 533, 416 N.Y.S. 2d 28, 30 (N.Y. Supr.Ct., 1st Dept. 1979), particularly when the Arbitrator retains jurisdiction, as here, to enforce the Award.  Pine Valley Productions v. S.L. Collections, 828 F.Supp. 245, 249 (S.D.N.Y. 1993).

have the Award modified on the basis that a matter was not before him for resolution.

 If Pfizer had filed such a motion and, arguably, the Arbitrator had agreed and modified his Award by deleting one or both of these challenged portions of the Award, it would have eliminated any "need" for Pfizer to bring this litigation, or to include both of these issues in its Complaint.  That would have saved this Court from having to "waste considerable judicial time and effort" on issues that need not have been brought before it.  Hotel St. George, *supra* at 778.

Alternatively, the Arbitrator might have denied any such motion, while giving a more detailed explanation for his actions.   Since an arbitrator has "no obligation to the court to give [his] reasons for an award...," Enterprise Wheel, *supra* at 598, he may not have initially fully explained his reasoning as to why he believed both issues were properly before him.  By failing to timely raise these two issues first *with the Arbitrator*, through a motion for modification, Pfizer denied the Arbitrator an opportunity to more fully explain his reasoning.

In either event, if Pfizer had exhausted its remedies with the Arbitrator -- *as Pfizer could and should have done* -- the issues before this Court would either have been eliminated, narrowed, or possibly clarified.  Since Pfizer failed to exhaust those remedies, it should not now be permitted to raise its modification-issues here.  *Id.*; *see*, Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Hollywood Heating &

Cooling, Inc., 1 Fed.Appx. 30 (2d Cir. 2001), *affirming*, 88 F. Supp. 2d 246 (S.D.N.Y. 2000); Hilowitz v. Hilowitz, 105 Misc. 2d 384, 432 N.Y.S. 2d 344, 348 (Queens Co. N.Y.S. Ct. 1980).

Pfizer argued below that NY CPLR 7509 and 7511 do not apply and, even if they do, they do not *require* it to exhaust by filing a motion for modification. The Union disagrees.

Pfizer's attempt below to distinguish Harry Hoffman Printing, Inc. v. Graphic Communications Local 261, 912 F.2$^d$ 608 (2d Cir. 1990) is unavailing. That case similarly arose under Section 301(a) of the LMRA." *Id.* at 612. The Second Circuit applied both New York's 90-day statute of limitations to vacate *labor* arbitration awards and New York's statute's accrual rule. This 90-day limitations period starts to run not when the labor award originally is issued, but when an arbitrator grants, or denies, a timely motion for modification *filed pursuant to NY CPLR 7509*. Harry Hoffman, *supra* at 614-15. If the arbitrator, due to the *functus officio* doctrine, did not have jurisdiction to modify the award, *see*, Melun Industries, Inc. v. Strange, 898 F.Supp. 995, 1001n.5 (S.D.N.Y. 1992), the accrual rule would require the statute of limitations to start running when the parties received the *original* award, not when the arbitrator later ruled on the motion for modification, since such a motion would be a nullity. But the motion was not treated as a nullity.

-37-

Thus, the <u>Harry Hoffman</u> Court effectively recognized, then, that the *functus officio* doctrine, which otherwise is the "default rule," <u>Hotel Greystone Corp. v. New York Hotel and Motel Trades Council</u>, 902 F.Supp. 482, 485 (S.D.N.Y. 1995), has been modified in New York by CPLR 7509, even for labor arbitration awards arising under Section 301. *Id*.; <u>1199 SEIU v. St. Luke Residential Health Care Facility, Inc.</u>, 2005 WL1828762 (N.D.N.Y. 2005). As such, Pfizer could have filed a motion for modification *with the Arbitrator* to have the alleged Award defects corrected.

Pfizer argued below that the New York statute only permits, but does not *require*, it to file such a motion with the Arbitrator.  However, the exhaustion requirement is a judicially-created  obligation, not a statutorily-created requirement. The exhaustion requirement applies in arbitration-related proceedings, despite no such statutory requirement, because of national labor policy favoring arbitration.  As the Supreme Court stated:

> "[E]xhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes. In such cases, the internal union procedures are capable of fully resolving meritorious claims short of the judicial forum. Thus, *if the employee received the full relief he requested through internal procedures, his § 301 action would become moot, and he would not be entitled to a judicial hearing*.... In either case, *exhaustion of internal remedies could result in final resolution of the employee's contractual grievance through private rather than judicial avenues*."

Clayton v. Int'l Union, UAW, 451 U.S. 679, 691 (1981) (emphasis added).  It is national labor policy, then, that requires such exhaustion, not the statute.

As a general rule, if a party fails to raise an issue *before the arbitrator*, that it could have raised, it has waived that argument. <u>Allied International Union v. Tristar Control Services, Inc</u>., 2007 WL 2845227, slip op., p. 5 (S.D.N.Y. 2007).[11/] Thus, Pfizer has waived any right to claim that the Arbitrator had no authority to decide the "notice" and "transfer" issues.

> 3.    <u>Pfizer effectively submitted the question of whether the "notice" issue was properly before the Arbitrator for resolution and this Court must defer to the Arbitrator's implicit resolution of that issue.</u>

Even if Pfizer did not have to exhaust its remedies through a motion for modification, it still may not argue here that the "notice" issue was not before the Arbitrator. The Union  argued that Pfizer failed to adequately comply with the Third Equivalency "notice"obligations, which it treated as a "contingency" requirement *in its Post-Hearing Brief to the Arbitrator*. (A-679-81).  Pfizer even acknowledged that the Union raised the "notice" issue, when Pfizer <u>later</u> filed its Reply Brief for the

---

[11/]Contrary to Pfizer's contention, <u>Tristar</u>, *supra*, slip op., p.3n.8, supports the Union's, not Pfizer's, position.  As the district court stated, "Courts in this Circuit only look to New York's arbitration statute when the LMRA is silent on an issue..." *Id*.  Since Section 301(a) of the LMRA, *i.e*., 29 U.S.C. Section 185(a) (USPA-73), is silent on the *functus officio* doctrine and on motions for modification, then NY CPLR 7509 may, and does, apply.  <u>Harry Hoffman</u>, *supra* at 614-15.

Employer, p. 13: "**According to the Union** [Post-Hearing] **Brief**, this was insufficient notice..." of one of the major, structural changes being made to future retiree benefits. (A-1140) (bracketed material and emphasis added).

Pfizer then argued that the "notice" provision did not give the Union bargaining rights (putting the issue of what the "notice" provision meant before the Arbitrator) and that the Union never grieved Pfizer's failure to give adequate notice (putting this procedural issue before him for resolution). (Reply Brief of Employer, pp. 15, 18-19: A-1142, 1145-46).

But Pfizer did <u>not</u> argue in its Reply Brief that the Arbitrator was without complete authority to decide the notice-related issues, as it now argues to the Court. Thus, Pfizer's failure to timely raise this "authority" issue waives any right to argue that procedural issue now. <u>Tristar</u>, *supra*, slip op., p. 5n.11.

> D. <u>Pfizer incorrectly seeks to have this Court search and weigh not only the entire record before the Arbitrator, but improperly seeks to add to that record</u>.

In its opening Pfizer not only argued for the wrong review standard, but also misleadingly asserted that the district court failed to consider the entire record "before Arbitrator Vaughn" (Pfizer Brief at 26-27). The Union will show that this Court need only consider whether there is some evidence and a barely colorable justification to

support the Arbitrator's factual findings, not weigh the entire factual record before the district court.  Nevertheless, no where can Pfizer conclusively show that the district court failed to consider the entire record "before Arbitrator Vaughn."

On the other hand, Pfizer not only wrongfully attempted to have the district court apply an improper standard of review to the record below, but also tried – and continues to try here – to improperly add factual matters to the record that were not before the Arbitrator through a somewhat slight of hand.  For instance, without citing to any record evidence *before the Arbitrator,* or factual findings by the Arbitrator, as to what did, or did not, occur during the pre-arbitration grievance proceedings on certain matters, Prizer has attempted -- through the Rule 56.1 procedure -- to improperly have the courts engage in their own fact-finding on what occurred in that pre-arbitration time period. That is improper. (A-2517-19).

This Court is limited to determining whether there is an absence of any evidence to support a crucial fact, *as found and relied on by the Arbitrator,*[12] and it

---

[12]It has been "held that there must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award. *See,* NF & M Corp. v. United Steelworkers of America, 524 F.2d 756, 760 (3d Cir.1975)." News America  Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990); *accord,* Nat'l Post Office, Mailhandlers, Watchmen, Messengers & Grp. Leaders Div., Laborers Int'l Union of N. Am., AFL-CIO v. U.S. Postal Serv., 751 F.2d 834, 843 (6th Cir. 1985).

may not make its own factual-findings, or even draw its own inferences from the arbitration record *different from or in addition to those drawn by the Arbitrator*. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 511 (2001); United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 44(1987).[13/]    So long as a court finds at least some evidence in the record to support the Arbitrator's factual findings, the inquiry stops there:

> "Our review of the arbitrator's factual findings is not whether those findings were supported by the weight of the evidence or even whether they were clearly erroneous. All that is required is some support in the record. *See NF & M Corp.,* 524 F.2d at 760. ***When the court finds some support, the inquiry is over***."

Tanoma Min. Co. v. Local Union No. 1269, United Mine Workers of Am., 896 F.2d 745, 748 (3d Cir. 1990)(emphasis added).[14/]

---

[13/]"The merits may not be relitigated, and the record of an arbitration proceeding may not be inspected for questions of law or fact."  In re Mastercraft Record Plating, Inc., 39 B.R. 654, 658 (S.D.N.Y. 1984).

[14/]Often, reviewing courts focus on only that evidence that *supports* the trier-of-facts' factual determinations, rather than on the entire record below:

> "To determine whether there is some evidence to support a finding of fact, 'we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary.'  Wal–Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex.2003). If more than a scintilla of evidence supports the finding of fact, we must uphold it. *See id."*

-42-

Pfizer seeks to turn that rule on its head and have this Court not only search the entire record before the Arbitrator, but add to that record through the Civil Rule 56.1 process; that is improper. <u>Garvey</u>, *supra* at 511.

Here, the Union will show that the arbitration record not only met the "barely colorable" standard to support the Arbitrator's findings that the "transfer" and "notice" issues were before him, but also that the record has some evidence to support his determinations.  That is all that is necessary to uphold the Award.

E.    <u>While there is no evidence that the district failed to consider the entire arbitration record, the relevant question, instead, is whether there is at least some evidence to support the Arbitrator's factual findings.</u>

From the district court's statement that it "relies on facts stated by Pfizer only to the extent that they are consistent with facts found by the Arbitrator, unless otherwise indicated...," Pfizer draws the unwarranted conclusion that the district court failed to consider the arbitration record as a whole.  But nothing in that statement, nor anything else in the Award, or the arbitration record, supports a conclusion that the district court did not consider the record as a whole.  Absent any evidence to the contrary, the Court must assume that the district court acted properly.

<u>ODL Servs., Inc. v. ConocoPhillips Co.</u>, 264 S.W.3d 399, 417 (Tex. App. 2008).

-43-

Nevertheless, that is not the relevant inquiry here. The judiciary should not be searching the entire record to see if it supports the Arbitrator's factual determinations, including his determination as to what issues were brought before him either by the Union and/or as *de facto* affirmative defenses. Instead, the judiciary's role is to determine whether there is merely a barely colorable justification for the Arbitrator's findings that the "transfer" and "notice" issues were before him for resolution:

> "Conversely, the award must be enforced 'if there is a barely colorable justification for the outcome reached.' Wallace v. Buttar, 378 F.3d182, 190 (2d Cir.2004) (quotation mark and citation omitted). Moreover, the facts of record must be construed most favorably to the prevailing party and the arbitration panel's implicit factual findings are not subject to any review whatsoever. Id. at 193."

Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou Grp., LLC, 758 F. Supp. 2d 222, 225 (S.D.N.Y. 2010), amended sub nom., Goldman Sachs Execution & Clearing, L.P. v. The Official Unsecured Creditors' Comm. of Bayou Grp., LLC, 2011 WL 2224629 (S.D.N.Y. May 31, 2011) aff'd sub nom., 491 F. App'x 201 (2d Cir. 2012) and aff'd, 491 F. App'x 201 (2d Cir. 2012). Contrary to Pfizer's position, this Circuit does not countenance a wide-ranging search by the judiciary of the arbitration record:

> "To the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so only for the purpose of discerning whether a colorable basis exists for the panel's award so as

to assure that the award cannot be said to be the result of the panel's manifest disregard of the law. A federal court may not conduct a reassessment of the evidentiary record, as did the district court here, upon the principle that an arbitral award may be vacated when it 'runs contrary to "strong" evidence favoring the party bringing the motion to vacate' the award. <u>Wallace</u>, 239 F.Supp.2d at 392 (quoting <u>Halligan</u>, 148 F.3d at 202). Instead, whatever the weight of the evidence considered as a whole, '[i]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.' <u>Fahnestock & Co., Inc. v. Waltman</u>, 935 F.2d 512, 516 (2d Cir.1991) (internal quotation marks and citation omitted). Only this approach to the evidentiary record is consistent with the 'great deference' which must be paid to arbitral panels by federal courts. <u>Duferco</u>, 333 F.3d at 388."

<u>Wallace v. Buttar</u>, 378 F.3d 182, 193 (2d Cir. 2004). This simply is just another way of saying that a court need only find "some" evidence in the record to support an arbitrator's factual findings, not weigh the entire evidentiary record, as Pfizer would have had the district court and, now, this Court do.

II.    <u>The Arbitrator's findings, that the "transfer" and "notice" issues were before him for resolution, are supported by some evidence in the arbitration record</u>.

A.    <u>The Arbitrator's factual determination, that the "transfer" of "legacy" Wyeth employees from the Wyeth to the Pfizer retiree medical plan was being challenged by the Union, is sufficiently supported by the arbitral record</u>.

In the Award, the Arbitrator found that:

"The Union challenges the Company's transfer of legacy Wyeth bargaining unit employees and their benefit administration to the Pfizer plan. **(See e.g., U. Ex. 6)**. The Company asserts, in response, that its

-45-

> unilateral decision to provide post-retirement benefits to bargaining unit members who retire on or after January 1, 2012 through the Pfizer Retiree Medical Plan, rather than continuing them in the Wyeth Retiree Medical Plan, was merely an exercise of its right to 'modify the Plans' within the meaning of the Third [Equivalency] Paragraph."

(A-1410) (bracketed material and boldness added). Clearly, the Arbitrator found that the "transfer" issue was before him for resolution. The sole question on this matter for this Court is whether there was some evidence in the arbitration record to support this finding. Contrary to Pfizer's position, there was. The grievances, *themselves*, clearly put the "transfer" issues before the Arbitrator.

As shown above, Union Exhibit 6, Local 95C's grievance, *itself*, was cited by the Arbitrator as an example of some evidence supporting this conclusion. That grievance stated:

> "The Company has notified the Union that effective on or about January 1, 2012 employees *will retire under the **Pfizer** Retiree Medical Plan*. It is the Union's position that _this_ is a *unilateral change* to the current employees' benefits."

(A-13, ¶24, A-392, A-1298-99, ¶24)(emphasis added). Local 143C's grievance was nearly identical. (A-13, ¶ 23, A-390, A-1298, ¶ 23). Pfizer's response clearly acknowledged that it was aware that the "transfer" issue was encompassed by that grievance:

-46-

"Disposition by Company: The parties met at the 3ʳᵈ step of the grievance procedure. The Union *confirmed* that the *scope of the grievance* covers presently active Legacy Wyeth (Pearl River) union colleagues that retire after January 1, 2012 and, if eligible for retiree medical coverage, will receive it *through <u>Pfizer's</u> retiree medical plan* and *<u>not</u> under the Legacy <u>Wyeth</u> retiree medical plan....*"

(A-390)(emphasis added).

These two grievances directly presented the "transfer" issue as a unilateral change, as Pfizer understood. Pfizer now attempts to avoid its prior understanding that the scope of these grievances included the unilateral transfer of coverage from the Wyeth to the Pfizer retiree medical plan by asserting that Union Counsel subsequently waived this argument at the arbitration; only claimed that the Union was challenging the substantive changes in actual retiree health benefits as a contract violation; and failed to discuss the "transfer" issue in its post-hearing briefs to the Arbitrator.

Ironically, Pfizer, which erroneously criticizes the district court for not considering the record "as a whole," can only make these arguments by taking out of context, only partially quoting Union Counsel, and, itself, misconstruing the record below. Once Union Counsel's complete statement on this issue is considered in context and "as a whole," there is little question that there was some evidence -- and even more than a barely colorable justification -- to support the Arbitrator's factual

-47-

determination that the Union had raised (and not waived) the "transfer" issue.

During the Union's opening statement, the "issues" before the Arbitrator were explained in more detail than suggested by Pfizer's Brief. Union Counsel presented the written statement, the "Union Pre-Hearing Statement on Recognition Clause" and he also argued that Pfizer had to keep the Group Insurance Plan "in place." (A-402, 406, 1926-28). He also explained, based on the Recognition Clauses in the Local Agreements, that before Pfizer could decide to make unilateral changes in mandatory bargaining subjects, Pfizer must give the Union timely notice and an opportunity to bargain over management's intentions. Even Wyeth's chief negotiator of the Equivalency Provisions, Dougherty, admitted that, but for those Equivalency Provisions, Wyeth -- and, now, Pfizer -- would, indeed, have to bargain before they could make the challenged unilateral changes:

> "Q.   ...Is it your understanding, Mr. Dougherty, that if these three [Equivalency] paragraphs weren't in here, then Wyeth or now Pfizer would have at least had to have bargained before they made the changes that are going into effect January 1, 2012?
>
> A.    In light of our position in 2005, yes."[15]

---

[15]Given the significant changes in benefits and costs that accompanied the "transfer," there could be little doubt that this change involved a mandatory bargaining subject, absent waiver. *See*, note 5, *supra*.

(T. 409)(A-533)(bracketed materials added).

Subsequently, Pfizer filed a response to the Union's Recognition Clause position. In that response, Pfizer did not dispute that, but for the Equivalency Provisions, it had an obligation to bargain about the changes based on the Recognition Clauses. However, in reference to the future retiree benefits, Pfizer contended that the Union had waived any right to demand such bargaining, when it agreed to the Wyeth-drafted Equivalency Provisions, *i.e.*, the three disputed paragraphs. (CX-11) (A-2007-11). Additionally, the parties had bifurcated the hearing, reserving litigation over the remedies, if necessary, until later, so detailed examination of the benefit/cost and other unilateral changes was unnecessary.

Consequently, the focus of the arbitration did not have to be and was not so much on the specifics of the unilateral changes -- such as the "transfer" to the Pfizer plan or the substantive changes that therefore resulted -- but on whether, through agreeing to the Equivalency Provisions, the Union had waived its right to bargain about *any* of these unilateral changes. Even Pfizer's counsel agreed that the specifics of the unilateral changes did not need to be developed in detail, since, "The question is whether Pfizer was permitted to make unilateral changes...." by "putting people into the Pfizer plan." (T. 546)(A-608).

-49-

It is within this context, then, that the Arbitrator had the necessary, even if it were only barely colorable, evidence, to justify his finding that the "transfer" issue -- and whether it was waived by the Equivalency Provisions -- was before him. Any doubts as to his finding on this issue must be resolved in favor of arbitrability. *See*, Mercury Construction, *supra* at 24-25; Beth Israel, *supra* at 614.[16/]

B.    Union Counsel did not waive the "transfer" claim (and the defense thereto) raised by the grievances.

Pfizer suggests that a statement by Union Counsel essentially constituted a waiver of this "transfer" issue. Pfizer is not only wrong, but, more importantly, the Arbitrator did not see it that way.  If anything, Union Counsel's partially-quoted statement relied on by Pfizer, when viewed in context, establishes just the opposite, as the Arbitrator obviously understood.  Union Counsel explained that there was confusion among the locals as to what changes were going to occur and whether they would even apply to their members:

"There was also some indication from Pfizer that retirees were

---

[16/] Pfizer's attempt to establish disputed discussions regarding the "transfer" issue during the pre-arbitration grievance processing is improper, since there was no such fact-finding by the Arbitrator.  Garvey, *supra* at 509-11. (A-2504-05 ¶¶ A-B, 2516-18 ¶¶ 24-26).  Pfizer had the opportunity, through a motion for modification, as addressed elsewhere, to establish such evidence before the Arbitrator, but failed to do so.  It may not develop such "facts" before the Court through the Rule 56.1 procedure.  *Id.*

> going to be tranferred from the Wyeth Retiree Health insurance Plan to the Pfizer Retiree Health Insurance Plan. But there was *no clear indication* that that was going to result in *any changes of significance, if any*, to the *former Wyeth employees* who are now Pfizer employees who would retire during the term of the current Coordinated Bargaining Agreement.
>
> At one local there was even an indication that, while these had been announced, they would not apply to the Union employees because of the Coordinated Bargaining Agreement, much like the issue that had come up back in 2004.
>
> At one of the other locals there still was some confusion as to what changes were going to occur."

(T. 27-28)(A-400).

Union Counsel then stated that, "If it <u>simply</u> was going to be a transfer from the Wyeth retiree plan to the Pfizer plan <u>with no substantive issues</u>, no problem." (T. 28)(A-400)(emphasis added). Pfizer cites to only this last statement and does so out of context, suggesting that it proves the "transfer" issue was <u>not</u> before the Arbitrator. However, when Union Counsel's *entire* statement is read, one sees that it proves no such thing! Union Counsel did <u>not</u> stop. He immediately went on to state that,

> "***But***, at Local 143 those changes were <u>not</u> clear what they might be. ***Ultimately***, once it started to become clear at Local 143-C -- they filed their grievance on October 1."

(T. 28)(A-400)(emphasis added). With Local 95C, Union Counsel also argued that Pfizer had to keep the Wyeth retiree plan "in place." (T.49)(A-406). In other words,

once the Union understood that the transfer to the Pfizer plan was <u>not</u> simply a "cosmetic" transfer, but *also* involved substantive, unacceptable, radical, adverse changes to the <u>post</u>-January 1, 2012, future retirees' costs and benefits, the Union challenged those changes through the two grievances.

The reason for the Union's delay in filing the grievances was explained by the difference in its bargaining rights *if* the transfer to the Pfizer plan had <u>not</u> involved any substantive changes, *i.e*., if the Wyeth legacy retirees, despite the transfer to the Pfizer plan, had been "grandfathered-in" *without any change*, then, "no problem." (A-1383)*.*  However -- once the Union eventually clarified that instead of a simple transfer without changes -- the transfer included significant benefit cuts and significant increased costs, it filed the grievances (A-1383-84).  Arguably, a "cosmetic" transfer without any such change would <u>not</u> have implicated the Union's bargaining rights -- and Pfizer's bargaining duties -- under the Recognition Clauses.

The National Labor Relations Act has been interpreted so that a change in the administrator of a benefit plan may--or may not-- involve a mandatory subject of bargaining.  A transfer in administrators must be bargained, *if* it is accompanied by substantive changes in benefits, or in how that plan is being administered. *See, e.g.*, <u>DST Industries, Inc.</u>, 313 NLRB No. 86 (1994); <u>Bastian-Blessing</u>, 195 NLRB 1108

(1972).[17] If the transfer is only "cosmetic," then the matter may not be bargainable. *See*, Connecticut Light, *infra*.

Arguably, Union Counsel's statement and the Locals' initial delay in filing their respective grievances, when seen in light of the NLRB case law, makes sense. *If* the transfer were merely "cosmetic" with no other substantive changes, this change in plans, might not have involved a mandatory subject of bargaining under the Recognition Clauses. If not, then there may have been no bargaining obligation to waive. *But*, once the Union clarified that the transfer actually involved substantive, adverse changes in costs and benefits -- thereby implicating their bargaining rights -- grievances challenging these decisions were filed. When Union Counsel's statement is read in its entirety, it is obvious that the Union was not waiving any "transfer" arguments raised by the grievances.

Pfizer was well aware that NLRB case law did not always require bargaining when there was a change in the administrator of employee benefits, since it raised that issue during the earlier investigation of the parallel unfair labor practice charges, citing The Connecticut Light & Power Co. v. NLRB, 476 F.2$^{d}$ 1079 (2d Cir. 1973).

---

[17]Pfizer acknowledged that the Arbitrator was empowered to "make essentially the same determination the NLRB would make as to whether a company has the right to implement a unilateral change..." (A-2008). Thus, NLRB cases were relevant for the Arbitrator to consider.

(A-1997).   As such, Pfizer likely fully understood the actual import of Union Counsel's statement, rather than seeing it as a waiver of any "transfer" argument.

Pfizer's suggestion that it somehow was prejudiced on the matter lacks merit. If Pfizer really believed this prejudice argument, it could have brought it back before the Arbitrator through a motion for modification.   Even if it had, it is doubtful that Pfizer could have offered much more evidence on the matter. Pfizer's own witness, Dougherty, acknowledged that, but for those provisions, Pfizer could not have made its unilateral changes.

Pfizer knew that the Union was arguing that the term "Plan" in the Equivalency Provisions did not refer to the Wyeth *retiree* plan and, as such, the Equivalency Provisions did not even apply. While the Arbitrator, in interpreting the term "Plan," found that it did refer to the "retiree" plan, he also found that, as Pfizer essentially had argued, the term referred to the Wyeth *retiree* plan.   He found there was no evidence that the Wyeth retiree plan had been modified to contain the same (radical) changes as were in the Pfizer retiree plan.

Given that Wyeth drafted the Equivalency Provisions nearly two years before the Wyeth/Pfizer merger, it is doubtful that Pfizer could have offered any evidence that the Equivalency Provisions authorized the transfer to its plan with the

accompanying, major, substantive, changes in benefits and costs.[18] Therefore, the term "Plan" arguably could not have referred to the substantively different <u>Pfizer</u> plan.

Nevertheless, the purported evidence, that Pfizer seems to suggest that it might have adduced to show that its right to modify the Wyeth plan included the right to make a so-called "cosmetic" transfer to the Pfizer plan, arguably is irrelevant. Contrary to Pfizer's suggestion, the transfer from the Wyeth to the Pfizer plan -- a transfer in the administrator of benefits -- was not merely "cosmetic," but involved substantial, adverse changes to future retiree costs and benefits.    Such a change involves a mandatory bargaining subject.  <u>DST</u>, *supra*; <u>Bastian-Blessing</u>, *supra*; <u>Suffolk Child Development Center, Inc</u>., 277 NLRB 1345, 1347-48 (1985); <u>Connecticut Light & Power Co. v. N.L.R.B.</u>, 476 F.2d 1079, 1082 (2d Cir. 1973). Therefore, any waiver of the Union's right to bargain over such a <u>non</u>-cosmetic transfer would have to be through "clear and unmistakable" evidence, as the Arbitrator understood. (A-674). <u>Suffolk</u>, *supra* at 1349-50. (Award, pp. 52-53, 78, 83, 91)(A-1371-72, 1397, 1402, 1410).   Since the term "Plan" in the Equivalency

---

[18] Pfizer suggests that it could have cured its violation "simply by retaining the post-2012 retirees in the <u>Wyeth</u> retiree health plan and modified the Wyeth plan to track precisely the substantive terms of the Pfizer retiree health plan ..." Pfizer Brief, p. 48n.16. Curiously, Pfizer gives no reason why it has not, since issuance of the Award, attempted to do just that.  Nevertheless, the fact is, Pfizer did not do that.

Provisions does not include the <u>Pfizer</u> plan, as the Arbitrator found, that *alone* should end the matter. No waiver.

Here, the "subject matter" of the grievances before the Arbitrator were sufficiently broad, as shown, to encompass the "transfer" issue. Even if nothing else is considered, these grievances and Pfizer's response thereto alone more than satisfy the "barely colorable" standard. Pfizer's efforts to show -- by misconstruing Union Counsel's statements -- that the Union waived the "transfer" issue -- should be summarily rejected.

      C.    <u>The Arbitrator's determination, that the "notice" issue was before him, must be given extreme deference and upheld, since at least some, and even more than, only a barely colorable amount of evidence supports his finding.</u>

The Arbitrator found that, "The Union also maintains that the Company did not satisfy the "notification" condition, which is comprised of several parts." (A-1408). This and other findings support the conclusion that the "notice" issue was before the Arbitrator. (A-1399). This Court must give extreme deference to this finding, so long as there is even only a barely colorable amount of some evidence to justify it. There is.

The Arbitrator found that the parties focused significant evidence on the "notice" issue. Just as the Union argued at the hearing, Pfizer's position effectively

constituted an affirmative defense that the Union could attack, regardless of the specific allegations in the grievances (A-600, 680-81, 1051); he placed the burden on the Company to establish such sufficient notice, essentially treating the Company's position as a *de facto* affirmative defense; and he found that Pfizer had failed to meet that burden.  Resolving such procedural issues are within his sole province.  <u>John Wiley</u>, *infra* at 557.

As to Pfizer's contention that the "notice" issue was not before him, his findings and the evidence clearly undercut that contention:

> "**The Union also maintains that the Company did not satisfy the notification condition, which is comprised of several parts.**  The Company must notify the Union of any changes to the Plan, and of any changes to contribution rates. The Company is obligated to provide these notifications **'as early as possible,'** but in all cases the notification must be provided **before** the changes are communicated **to employees** and before enrollment materials are distributed.

> The advance notification requirement serves at least two purposes. First, it provides an opportunity for the Union to analyze whether the proposed modification will satisfy the 'equal application' condition and, if it determines not, to consider approaching the Company. Second, it provides the Union an opportunity to prepare for possible questions and concerns of the bargaining unit members.

> The Parties dispute many of the facts relating to the timing and nature of the disclosures made by the Company to the Union and to its employees.  **Much of the testimony elicited at the hearing focused on these disputes**, primarily in the context of the Company's assertion that

-57-

the grievances were not filed within the applicable time limits. However, *the Company, as the party seeking to assert that the Union waived its right to bargain over the transfer of Future Retirees to the Pfizer Retiree Medical plan, bears the burden of proving that it satisfied the notification requirement on which the waiver is conditioned*. Because the notification condition requires the Company to notify the Union prior to notifying employees, disclosures that are made to employee groups that may include Union officials, such as employee meetings, would not satisfy this condition. The Company identifies only one attempt to notify the Union of any aspect of the proposed transfer prior to initiating communications with employees. Specifically, the Company asserts that it notified Mr. Villanova, who both Parties agree was the appropriate Union 'contact person,' of the changes it planned to institute in the 'legacy' Wyeth employee's benefit plans in a conference call on July 8, 2010, five days before the Company communicated at least some aspects of the upcoming changes to employees. Although Mr. Villanova testified that he did not recall participating in a conference call on that date, I credit Mr. Gonzalez's testimony that Mr. Villanova did participate in that conference call. However, **the Company produced no evidence of any specific information provided to Mr. Villanova during that call**. The Company did not submit copies of an agenda, contemporaneous internal notes, or follow-up communications with Mr. Villanova summarizing the content of the call."

(A-1408-10). Pfizer has not challenged that there was some evidence to support these findings.

The Union expanded on, in its Post-Hearing Reply Brief, that Pfizer's contention, that Villanova had participated in this July 8, 2010, conference call, was highly suspect. (A-679-80). While the Arbitrator found that Villanova was on that "quick" call -- a fact that the Union still disputes, but cannot challenge here, <u>Garvey</u>,

*supra* -- the Arbitrator was <u>not</u> prepared, most likely given the significant doubts raised by the Union in that brief, to find that *sufficient* verbal "notice," if any, of the specific changes had been given in that call *to the Union*:

> "While Pfizer introduced a July 1, 2010, email (with a somewhat different attachment then the substance of the email), suggesting that this email was sent to Villanova, Pfizer failed to produce other documentation that could have substantiated Gonzalez's testimony that Villanova participated in a July 8, 2010, conference call. The July 1, email -- unlike the attachment thereto -- not only stated that Pfizer would like to have a 'quick call' to discuss future benefit changes for 'legacy Wyeth **employees' -- no mention of retiree benefits** -- it also included the following sentence:

> 'Are you available on Thursday, July 8 at 10 a.m. ET?'

> While Pfizer included an attachment to its exhibit (CX-19), it did not introduce a document, which showed that one of the recipients, Rich Whalen (who has no responsibility for Chemical Worker locals) declined the conference-call invitation, and that Villanova did <u>not</u> respond to the invitation. Moreover, even though Gonzalez testified that he sent out a subsequent email with the telephone 'call-in' number, so that participants would know how to join the conference call, that email was not produce or introduced by Pfizer. There was no testimony that this subsequent email was sent to Villanova. Moreover, Gonzalez could not confirm how long this 'quick call' took, so it is not at all clear that the call was long enough to have encompassed all of the various unilateral changes at issue. Further, Gonzalez admitted that Pfizer probably could have obtained evidence (but did not) to show who called in on July 8 and how long that call would have taken.

> There is no evidence Villanova received this email; no evidence that Gonzalez sent Villanova the telephone 'call-in' number, so

Villanova could participate in the call; no notes of what purportedly was discussed in the call or evidence as to how long this 'quick call' took, or whether it was even long enough to explain the major change in premium-determination methodology and the new subsidization 'cap;' and no evidence of who, if anyone, called-in for the conference, even though Pfizer presumably could have, but did not, attempt to provide some, or all, of such evidence."

(Union Post-Hearing Reply Brief, pp. 42-43)(A-1052-53). Apparently, the Union's arguments were sufficient to cause the Arbitrator to doubt that Gonzalez -- during this "quick call" -- had given Villanova timely, adequate, and sufficient notice of the specifics of the upcoming changes:

"Mr. Gonzalez testified that the Company discussed upcoming benefit changes. However, **Mr. Gonzalez did not identify any specific information that was provided to Mr. Villanova, such as the 'cap' on required Company contributions, eligibility rules, or method for determining required contributions.** Although the Company produced an e-mail dated August 16, 2010 including a copy of the 'One Sheet' and the slide presentation that had been used in employee presentations at Pearl River, **this information was provided after the Company had communicated the information to employees**.

The notification condition requires the Company to notify the Union of 'any changes' to a Plan and of any changes in contribution rates, and provide that notification **'as early as possible.'** The transfer of Future Retirees to the Pfizer Retiree Medical Plan entailed numerous changes **with significant financial implications.** Although I find it likely that the Company notified Mr. Villanova of its intention to transfer future retirees to the Pfizer Retiree Medical Plan, **there is insufficient basis on which to conclude that it provided notice of the specific changes associated with the transfer.** In addition, I am not convinced that a conference call scheduled five days before the transfer

-60-

was communicated to employees, satisfied the requirement that the Company notified the Union 'as early as possible.'"

(Award, pp. (A-1409-10)(bold type and italics added).  Pfizer cannot challenge these factual findings.

This "notice" issue did not first come up after the Union put on its case, as Pfizer suggests. During its case-in-chief, the Union elicited evidence without objection from Greg Villanova, that he, as the Union's designated contact person, had <u>not</u> received prior notice of the substantive changes:

"Q.    Were you the point representative and agent for the Union that that notice should go to?

A.    Yes.

Q.    And I think you've heard either in testimony or in discussions amongst various people that the Employer provided some documentation in July and/or August of 2010 about the changes in various detail levels or non-details that would be made for future retirees effective January 1, 2012.

Any time in July or August of 2010, did anybody from Pfizer give you notice that they were going to make any of these changes?

-61-

> A.    No.  I had a conversation with Kevin Gonzalez that they were
>
> going to put people into the Pfizer plans, but I didn't know any of
>
> the details about what that was.
>
> Q.    Did you even have a copy of the Pfizer plan?
>
> A.    No.  No, I didn't."

(T. 320-21)(A-511).[19]

During cross-examination of Pfizer's witness, Kevin Gonzalez, the Union also

---

[19] When Pfizer suggests that late on the third day of hearing the Union "hinted" that it might raise a notice issue but "seemed" to abandon the issue (Pfizer Brief, pp. 10-11), Pfizer misleads this Court.  The matter under inquiry at that time in the hearing dealt with whether pre-January 1, 2012, retirees had been given notice that -- unlike the January 1, 2012, *and after* retirees -- they either would have no changes, or their changes might be phased-in over 8-10 years, and not immediately.  Since "notice" about the pre-January 1, 2012, retirees was not part of the grievances, the Union had no further need to pursue that line of questioning.  (T. 492-93)(A-594).

The Union did not withdraw the "notice' issue as to the post-January 1, 2012, retirees, as both its Post-Hearing Brief and Reply Brief to the Arbitrator clearly reflect, a fact that Pfizer well knew (A-679-81, 1051-54), and nothing in Pfizer's Reply Brief suggests otherwise.  (A-1145-46).  Pfizer only argued in its Reply Brief that it complied with its "notice" obligations and that the Union failed to file a specific grievance raising the "notice" issue.  (A-1145).  However, the Union already established in the Union's Post-Hearing Brief at 40-41 (A-680-81) why it did not need to file such a grievance, since it was Pfizer's duty to prove *its* affirmative defense that it had given such adequate and timely notice.

For Pfizer to now argue to this Court that the Union withdrew the "notice" issue from the Arbitrator simply misrepresents what occurred.

established that Pfizer did <u>not</u> provide Villanova with details of these changes until August 16, 2010, significantly after Pfizer provided these written details to the employees as early as July 13, 2010. (T. 354, 472, and 476-77)(A-520, 589, 590, 1373, 1409) (Union Post-Hearing Reply Brief, p. 17)(A-1027).

Contrary to Pfizer's claims, the "notice" issues properly were before the Arbitrator and vigorously litigated, if not part of the Union's case-in-chief, then part of the Union's attack of Pfizer's *de facto* affirmative defense.[20] The Arbitrator effectively accepted the Union's position that it was not required to specifically state the "notice" issue in the grievances, since Pfizer was relying on the Equivalency Provisions as constituting a waiver of the Union's otherwise acknowledged right, under the Recognition Clauses, to demand bargaining over the matter.  (A-680-81).

While Pfizer objected to the Union's characterization of its *de facto* waiver defense as an affirmative defense, the Arbitrator, placed the burden on Pfizer to prove

---

[20]Regardless of how Pfizer may characterize its position, the defense of waiver is an affirmative defense. *See, e.g.*, F.R.C.P., Rule 8(c)(1).  (USPA-77).  As the Arbitrator held, Pfizer had the burden to assert and prove this defense.  (A-1410); Hallinan v. Republic Bank & Trust Co., 519 F.Supp. 2d 340, 358 (S.D.N.Y. 2007). Even if not raised in the grievances, the "notice" issue was tried by at least implied consent and should be treated as part of the grievance litigation.  *Id.* at 351.

Nevertheless, such procedural issues are for the Arbitrator, not the courts. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964); Rochester Tel. Corp. v. Commercial Workers of America, 340 F.2d 237, 238-39 (2d Cir. 1965).

this defense, essentially accepting the Union's "affirmative defense" characterization. (T. 504, 517)(A-597, 600, 1410). As a *de facto* affirmative defense, the Union could, and did, attack that defense, even if it was not specifically raised in its "complaints" a/k/a "grievances." Consequently, it was not the Union's obligation to initially raise the "notice" issue, but Pfizer's burden to come forward and prove that it had complied with its obligations under the Equivalency Provisions, including complying with its "notice" obligations to establish any waiver of the Union's bargaining rights.

III. The Arbitrator's findings, that the term "Plan" does not include the **Pfizer** retiree plan, and, that the "as early as possible" requirements of the "notice" provisions of the Equivalency Provisions were not met, draw their essence from the Coordinated Bargaining Agreement and some of the evidence.

    A. The Arbitrator's finding, that the term "Plan" in the Equivalency Provision did not include the Pfizer retiree plan, was within his authority and may not be disturbed by this Court.

The Supreme Court has repeatedly stated that the judiciary is not to second-guess the factual findings of arbitrators, even if those findings are improvident or silly. Garvey, *supr*a at 509. Yet, that is exactly what Pfizer invites this Court to do, when it asks it to vacate the Arbitrator's finding that the term "Plan" does not include the Pfizer retiree plan, a plan that the negotiators of the Equivalency Provision arguably did not contemplate, since the merger of Wyeth and Pfizer occurred nearly two years after the Equivalency Provisions were negotiated. The Court should decline

this invitation.

While Pfizer argues that the Arbitrator somehow deprived it of some right, Pfizer Brief at 54-55, all the Arbitrator did was essentially accept the Union's argument that the term "Plan" was sufficiently ambiguous, so as not to to be a "clear and unmistakable" waiver of the union's right to bargain. Incredibly, what Pfizer wants this Court and, presumably, would have wanted the Arbitrator to do, is exactly what Pfizer is criticizing the Arbitrator (incorrectly) for doing on the "notice" issue: add to and modify the Equivalency Provisions of the labor agreement, by adding to the term "Plans" a <u>Pfizer</u> plan that arguably never was envisioned by the negotiators, a plan that none of the evidence in the arbitration hearing supports being included as a part of that term, a finding of fact that would not even be supported by some evidence in the record.

B.    <u>The Arbitrator did not add to the "notice" requirements of the Equivalency Provisions, but only interpreted and applied those provisions.</u>

Pfizer argues that, even if the "notice" issue was litigated, it accuses the Arbitrator of exceeding his authority by rewriting that Equivalency Provision, suggesting that he added a 5-day written notice requirement. He did no such thing. Pfizer can make such an accusation only by misconstruing the Award.

The Arbitrator found that the "notification" condition requires Pfizer to notify the Union of "any changes" to the Plan and of "any changes" in contribution rates and provide such notification "as early as possible" before telling employees. (A-1309). He did not find that this had to be in writing, at least not in all cases. He did find, based on the specific language of the Third Equivalency Paragraph, that in this specific case, a quick conference call to the Union five (5) days before the changes and complicated details were communicated in writing to employees did not satisfy this requirement. (A- 1409-10). He did not say that such notice always had to be more than five (5) days or always had to be in writing. Arguably, a small, simple change might not require much advance or even written notice.

Here, his finding must be understood within the context of the evidence and the Union's arguments. While the Union disputed that it received any prior notice at all before Pfizer notified the employees, it apparently raised considerable doubt in the Arbitrator's mind as to what, orally in a short telephone call, Pfizer actually did convey, or could have conveyed, to the Union (before it conveyed in writing to the employees) what the upcoming changes were going to be.

The Arbitrator found that Pfizer produced no evidence of any specific information provided to the Union during that call; it produced no copies of an agenda, contemporaneous internal notes, or follow-up communications with the

Union's "point person" summarizing the content of the call. (A-1409).  On the other hand, the evidence was undisputed that Pfizer provided detailed written information to the employees as early as July 13, 2013, but no written detailed information to the Union until August 16, 2013, of the upcoming changes.  Pfizer never explained why it gave detailed, written information to the employees five days after the call, but did not email that same information to the Union earlier, or not until more than a month later! This certainly was not "as early as possible."

Arguably, the Arbitrator's findings were only directed to <u>that</u> situation and under <u>those</u> conditions, *i.e.*, was the "notice" sufficient and was it "as early as possible?"  Pfizer does not contest that it was within his authority to determine whether the "notice" was sufficient and "as early as possible."  It just doesn't like his findings, but wants to try and re-characterize them in a way to overturn them.  That, this Court should not allow it to do.

The unilateral changes were complicated, extensive, multiple, and highly significant and not easily conveyed orally.  There is no basis to reject the Arbitrator's obvious doubts that they were, or even could have been, adequately described in a "quick" conference call.

<u>CONCLUSION</u>

For the reasons stated herein and by the district court, the Award, as corrected, should be confirmed and enforced in its entirely and remanded to the Arbitrator for further appropriate proceedings.

Respectfully submitted,


s/Randall Vehar
Randall Vehar    (Ohio Bar No.0008177)
UFCW Assistant General Counsel/
Counsel for ICWUC/UFCW Locals 95C and 143C
1655 W. Market Street
Akron, OH 44313
330/926-1444
330/926-0950  FAX
rvehar@ufcw.org


Robert W. Lowrey    (Ohio Bar No. 0030843)
UFCW Assistant General Counsel/
Counsel for ICWUC/UFCW Locals 95C and 143C
1655 W. Market Street
Akron, OH  44313
330/926-1444
330/926-0950   FAX
rlowrey@ufcw.org



Patricia McConnell, Esq.
MEYER, SUOZZI, ENGLISH &KLEIN, P.C.
990 Stewart Avenue
P.O. Box 9194
Garden City, NY    11530-9194
516/741-6565
516/741-6706 Fax

COUNSEL FOR ICWUC/UFCW LOCALS 95C
    AND 143C

-69-

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Pursuant to Rule 32(a)(7)(b) of the Federal Rules of Appellate Procedure, I certify that this brief contains no more than 16,500 words. Based on the word count of the word processing system used to prepare this Brief, the word count, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) is 16,445.

I also certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect X6 in 14 pt. Times New Roman font.


s/Randall Vehar
Randall Vehar

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of October, 2014, that the foregoing and the Union's Special Appendix has been filed via the CM/ECF system, which will cause electronic service of the same to be issued on this same date to:

Michael R. Cooper, Esq.
Daniel D. Schudroff, Esq.
JACKSON LEWIS LLP
666 Third Avenue
New York, NY   10017
CooperM@JacksonLewis.com

s/Randall Vehar
Randall Vehar

*UNION SPECIAL APPENDIX*

## <u>TABLE OF CONTENTS</u>

Section 301 of the Labor-Management Relations Act,
    29 U.S.C. Section 185. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Federal Rules of Civil Procedure,
    Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

Local Rules of the United States District Courts of the
    Southern and Eastern Districts of New York,
    Local Civil Rule 56.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

McKinney's Consolidated Laws of New York Annotated
    Civil Patice Law and Rules,
    CPLR §7509. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

McKinney's Consolidated Laws of New York Annotated
    Civil Practice Law and Rules,
    CPLR §7511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

Case: 14-1240    Document: 59    Page: 84    10/02/2014    1335281    95

---

United States Code Annotated
  Title 29. Labor
    Chapter 7. Labor-Management Relations (Refs & Annos)
      Subchapter IV. Liabilities of and Restrictions on Labor and Management

---

29 U.S.C.A. § 185

§ 185. Suits by and against labor organizations

Currentness

<Notes of Decisions for 29 USCA § 185 are displayed in twenty-three separate documents. Notes of Decisions for subdivision I are contained in this document. For Notes of Decisions for subdivisions II to XXIII, see documents for 29 USCA § 185, post.>

(a) Venue, amount, and citizenship

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

(b) Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments

Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

(c) Jurisdiction

For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

(d) Service of process

The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

(e) Determination of question of agency

74

Case: 14-1240      Document: 59      Page: 85      10/02/2014      1335281      95

For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

**CREDIT(S)**
   (June 23, 1947, c. 120, Title III, § 301, 61 Stat. 156.)

Notes of Decisions (402)

29 U.S.C.A. § 185, 29 USCA § 185
Current through P.L. 113-163 (excluding P.L. 113-128) approved 8-8-14

---

**End of Document**                                   © 2014 Thomson Reuters. No claim to original U.S. Government Works.

75

---

United States Code Annotated
   Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
      Title III. Pleadings and Motions

Federal Rules of Civil Procedure Rule 8

Rule 8. General Rules of Pleading

Currentness

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:

  **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

  **(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and

  **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

**(b) Defenses; Admissions and Denials.**

  **(1)** *In General.* In responding to a pleading, a party must:

    **(A)** state in short and plain terms its defenses to each claim asserted against it; and

    **(B)** admit or deny the allegations asserted against it by an opposing party.

  **(2)** *Denials--Responding to the Substance.* A denial must fairly respond to the substance of the allegation.

  **(3)** *General and Specific Denials.* A party that intends in good faith to deny all the allegations of a pleading--including the jurisdictional grounds--may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

  **(4)** *Denying Part of an Allegation.* A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

  **(5)** *Lacking Knowledge or Information.* A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

76

Case: 14-1240     Document: 59     Page: 87     10/02/2014     1335281     95

**(6)** *Effect of Failing to Deny.* An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

**(c) Affirmative Defenses.**

**(1)** *In General.* In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

• accord and satisfaction;

• arbitration and award;

• assumption of risk;

• contributory negligence;

• duress;

• estoppel;

• failure of consideration;

• fraud;

• illegality;

• injury by fellow servant;

• laches;

• license;

• payment;

• release;

• res judicata;

• statute of frauds;

• statute of limitations; and

• waiver.

**(2)** *Mistaken Designation.* If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

77

**(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.**

  **(1)** *In General.* Each allegation must be simple, concise, and direct. No technical form is required.

  **(2)** *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

  **(3)** *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

**(e) Construing Pleadings.** Pleadings must be construed so as to do justice.

**CREDIT(S)**

   (Amended February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007; April 28, 2010, effective December 1, 2010.)

**ADVISORY COMMITTEE NOTES**

1937 Adoption

**Note to Subdivision (a).** See [former] Equity Rules 25 (Bill of Complaint--Contents), and 30 (Answer--Contents--Counterclaim). Compare 2 Ind.Stat.Ann. (Burns, 1933) §§ 2-1004, 2-1015; 2 Ohio Gen.Code Ann. (Page, 1926) §§ 11305, 11314; Utah Rev.Stat.Ann. (1933) §§ 104-7-2, 104-9-1.

See Rule 19(c) for the requirement of a statement in a claim for relief of the names of persons who ought to be parties and the reason for their omission.

See Rule 23(b) for particular requirements as to the complaint in a secondary action by shareholders.

**Note to Subdivision (b). 1.** This rule supersedes the methods of pleading prescribed in U.S.C., Title 19, § 508 (Persons making seizures pleading general issue and proving special matter); U.S.C. Title 35, [former] §§ 40d (Proving under general issue, upon notice, that a statement in application for an extended patent is not true), 69 [now 282] (Pleading and proof in actions for infringement) and similar statutes.

**2.** This rule is, in part, [former] Equity Rule 30 (Answer--Contents--Counterclaim), with the matter on denials largely from the Connecticut practice. See Conn. Practice Book (1934) §§ 107, 108, and 122; Conn.Gen.Stat. (1930) §§ 5508 to 5514. Compare the English practice, *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 19, r.r. 17-20.

**Note to Subdivision (c).** This follows substantially *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 19, r. 15 and N.Y.C.P.A. (1937) § 242, with "surprise" omitted in this rule.

**Note to Subdivision (d).** The first sentence is similar to former Equity Rule 30 (Answer--Contents--Counterclaim). For the second sentence see former Equity Rule 31 (Reply--When Required--When Cause at Issue). This is similar to *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 19, r.r. 13, 18; and to the practice of the States.

**Note to Subdivision (e).** This rule is an elaboration upon [former] Equity Rule 30 (Answer--Contents--Counterclaim), plus a statement of the actual practice under some codes. Compare also [former] Equity Rule 18 (Pleadings--Technical Forms Abrogated). See Clark, *Code Pleading* (1928), pp. 171-4, 432-5; Hankin, *Alternative and Hypothetical Pleading* (1924), 33 Yale L.J. 365.

**Note to Subdivision (f).** A provision of like import is of frequent occurrence in the codes. Smith-Hurd Ill.Stats. ch. 110, § 157(3); 2 Minn.Stat. (Mason, 1927) § 9266; N.Y.C.P.A. (1937) § 275; 2 N.D.Comp.Laws Ann. (1913) § 7458.

## 1966 Amendment

The change here is consistent with the broad purposes of unification.

## 1987 Amendment

The amendments are technical. No substantive change is intended.

## 2007 Amendment

The language of Rule 8 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

The former Rule 8(b) and 8(e) cross-references to Rule 11 are deleted as redundant. Rule 11 applies by its own terms. The force and application of Rule 11 are not diminished by the deletion.

Former Rule 8(b) required a pleader denying part of an averment to "specify so much of it as is true and material and * * * deny only the remainder." "[A]nd material" is deleted to avoid the implication that it is proper to deny something that the pleader believes to be true but not material.

Deletion of former Rule 8(e)(2)'s "whether based on legal, equitable, or maritime grounds" reflects the parallel deletions in Rule 1 and elsewhere. Merger is now successfully accomplished.

## 2010 Amendments

**Subdivision (c)(1).** "[D]ischarge in bankruptcy" is deleted from the list of affirmative defenses. Under 11 U.S.C. § 524(a)(1) and (2) a discharge voids a judgment to the extent that it determines a personal liability of the debtor with respect to a discharged debt. The discharge also operates as an injunction against commencement or continuation of an action to collect, recover, or offset a discharged debt. For these reasons it is confusing to describe discharge as an affirmative defense. But § 524(a) applies only to a claim that was actually discharged. Several categories of debt set out in 11 U.S.C. § 523(a) are excepted from discharge. The issue whether a claim was excepted from discharge may be determined either in the court that entered the discharge or--in most instances--in another court with jurisdiction over the creditor's claim.

Notes of Decisions (3117)

Fed. Rules Civ. Proc. Rule 8, 28 U.S.C.A., FRCP Rule 8
Amendments received to 7-1-14

---

 © 2014 Thomson Reuters. No claim to original U.S. Government Works.

 © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# Local Rules of the
# United States District Courts for the
# Southern and Eastern Districts of New York

**Effective September 3rd, 2013**

**with amendments to the
SDNY Rules for the
Division of Business Among District Judges
Rule 13 effective 1/1/2014,
Rules 18 and 21 effective 1/13/2014**

**Adopted by the Board of Judges of the
Eastern District of New York and the
Southern District of New York
Approved by the Judicial Council of the Second Circuit**

Court pursuant to Local Civil Rule 55.2(a) or (b) above shall simultaneously be mailed to the party

against whom a default judgment is sought at the last known residence of such party (if an individual)

or the last known business address of such party (if a person other than an individual).    Proof of

such mailing shall be filed with the Court.    If the mailing is returned, a supplemental affidavit shall be

filed with the Court setting forth that fact, together with the reason provided for return, if any.

### COMMITTEE  NOTE

Although Fed. R. Civ. P. 55(b) does not require service of notice of an application for a default
judgment upon a party who has not appeared in the action, the Committee believes that experience has
shown that mailing notice of such an application is conducive to both fairness and efficiency, and has
therefore recommended a new Local Civil Rule 55.2(c) providing for such mailing.

## Local Civil Rule 56.1.   Statements of Material Facts on Motion for Summary Judgment

a)   Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in

numbered paragraphs, of the material facts as to which the moving party contends there is no

genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the

motion.

(b)   The papers opposing a motion for summary judgment shall include a correspondingly

numbered paragraph responding to each numbered paragraph in the statement of the moving party,

and if necessary, additional paragraphs containing a separate, short and concise statement of

additional material facts as to which it is contended that there exists a genuine issue to be tried.

(c)   Each numbered paragraph in the statement of material facts set forth in the statement

required to be served by the moving party will be deemed to be admitted for purposes of the motion

unless specifically controverted by a correspondingly numbered paragraph in the statement required

to be served by the opposing party.

(d)   Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including

each statement controverting any statement of material fact, must be followed by citation to evidence

which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).

## COMMITTEE NOTE

The requirement embodied in Local Civil Rule 56.1 is firmly rooted in the local practice of the Southern and Eastern Districts, and the Committee recommends its retention. The language of Local Civil Rule 56.1 was revised in 2004 to make clear that any statement pursuant to Local Civil Rule 56.1 must be divided into brief, numbered paragraphs, that any opposing statement must respond specifically and separately to each numbered paragraph in the statement, and that all such paragraphs in both statements and opposing statements must be supported by citations to specific evidence of the kind required by Fed. R. Civ. P. 56(c). The Committee believes that the language adopted in 2004 sets forth these requirements clearly, and does not recommend any changes in that language.

## Local Civil Rule 56.2.  Notice to Pro Se Litigant Who Opposes a Summary Judgment

Any represented party moving for summary judgment against a party proceeding *pro se* shall

serve and file as a separate document, together with the papers in support of the motion, the

following "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" with the full

texts of Fed. R. Civ. P. 56 and Local Civil Rule 56.1 attached.   Where the pro se party is not the

plaintiff, the movant shall amend the form notice as necessary to reflect that fact..

### Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment

The defendant in this case has moved for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure.   This means that the defendant has asked the Court to decide this

case without a trial, based on written materials, including affidavits, submitted in support of the

motion.   THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED

WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing

sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil

Procedure and by Local Civil Rule 56.1.   The full text of Rule 56 of the Federal Rules of Civil

Procedure and Local Civil Rule 56.1 is attached.

In short, Rule 56 provides that you may NOT oppose summary judgment simply by relying

upon the allegations in your complaint.   Rather, you must submit evidence, such as witness  statements

or documents, countering the facts asserted by the defendant and raising specific facts        that support

Case: 14-1240     Document: 59     Page: 93     10/02/2014     1335281     95

---

> McKinney's Consolidated Laws of New York Annotated
>> Civil Practice Law and Rules (Refs & Annos)
>>> Chapter Eight. Of the Consolidated Laws
>>>> Article 75. Arbitration (Refs & Annos)

McKinney's CPLR § 7509

§ 7509. Modification of award by arbitrator

Currentness

On written application of a party to the arbitrators within twenty days after delivery of the award to the applicant, the arbitrators may modify the award upon the grounds stated in subdivision (c) of section 7511. Written notice of the application shall be given to other parties to the arbitration. Written objection to modification must be served on the arbitrators and other parties to the arbitration within ten days of receipt of the notice. The arbitrators shall dispose of any application made under this section in writing, signed and acknowledged by them, within thirty days after either written objection to modification has been served on them or the time for serving said objection has expired, whichever is earlier. The parties may in writing extend the time for such disposition either before or after its expiration.

**Credits**

(L.1962, c. 308.)

**Editors' Notes**

**PRACTICE COMMENTARIES**

by Vincent C. Alexander

CPLR 7509 specifies the procedures and grounds for modification of an award by the arbitrator. Under prior law, the arbitrator's authority ceased upon making an award, and she could not thereafter change or clarify it in any manner. *See* N.Y.Adv.Comm.on Prac. & Proc., Second Prelim.Rep., Legis.Doc. No.13, p.144 (1958). [hereinafter cited as Second Prelim.Rep.]. Today, upon application of a party, the arbitrator may modify the award on any of the grounds listed in CPLR 7511(c), *i.e.*, miscalculation of figures; mistake in description of persons, things or property; correction with respect to matters not within the submission to arbitrate; or imperfection in matters of form not affecting the merits. The court may thereby be freed of the burden of making formal corrections. If one of the parties has made a motion to the court to vacate or modify the award pursuant to CPLR 7511, the court may await the outcome of an application made under CPLR 7509, if any, or send the award back to the arbitrator directing a modification or correction. Second Prelim.Rep., *supra*, at 144.

An example of the utility of CPLR 7509 is the decision in *Cardinal Clothing, Canada, Inc. v. Houndstooth Corp.*, 2001, *unreported opinion published at* 2001 WL 914111 (Sup.Ct.N.Y.Co.), where the court held that an arbitration panel acted properly in modifying the caption of an arbitration award to reflect the name of an additional successful claimant. The original papers named, as the sole claimant, a company that had been dissolved. Throughout the arbitration, however, both adversaries referred to the dissolved company's corporate successor in interest as one of the claimants. Modifying the award "to correct a mistake in the description of the holder of the claim" was within the

83

---

McKinney's Consolidated Laws of New York Annotated
    Civil Practice Law and Rules (Refs & Annos)
      Chapter Eight. Of the Consolidated Laws
        Article 75. Arbitration (Refs & Annos)

McKinney's CPLR § 7511

§ 7511. Vacating or modifying award

Currentness

(a) When application made. An application to vacate or modify an award may be made by a party within ninety days after its delivery to him.

(b) Grounds for vacating.

1. The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:

(i) corruption, fraud or misconduct in procuring the award; or

(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or

(iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or

(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.

2. The award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate if the court finds that:

(i) the rights of that party were prejudiced by one of the grounds specified in paragraph one; or

(ii) a valid agreement to arbitrate was not made; or

(iii) the agreement to arbitrate had not been complied with; or

(iv) the arbitrated claim was barred by limitation under subdivision (b) of section 7502.

84

---

Case: 14-1240    Document: 59    Page: 95    10/02/2014    1335281    95

(c) Grounds for modifying. The court shall modify the award if:

1. there was a miscalculation of figures or a mistake in the description of any person, thing or property referred to in the award; or

2. the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

3. the award is imperfect in a matter of form, not affecting the merits of the controversy.

(d) Rehearing. Upon vacating an award, the court may order a rehearing and determination of all or any of the issues either before the same arbitrator or before a new arbitrator appointed in accordance with this article. Time in any provision limiting the time for a hearing or award shall be measured from the date of such order or rehearing, whichever is appropriate, or a time may be specified by the court.

(e) Confirmation. Upon the granting of a motion to modify, the court shall confirm the award as modified; upon the denial of a motion to vacate or modify, it shall confirm the award.

**Credits**
(L.1962, c. 308.)

**Editors' Notes**

## PRACTICE COMMENTARIES

by Vincent C. Alexander

### C7511:1 Timing of Application to Vacate or Modify.

### C7511:2 Grounds for Vacating or Modifying, In General.

### C7511:3 Corruption, Fraud or Misconduct.

### C7511:4 Partiality of the Arbitrator.

### C7511:5 Excess of Power.

**(1)** *Clear Exceeding of Enumerated Limitation on Arbitrator's Authority.*

**(2)** *Irrational Decision-Making.*

**(3)** *Violation of Strong Public Policy.*

**(4)** *Additional Layer of Review in Compulsory Arbitration.*

85